*Served JA*
*5-19-17*
*2:45 pm*

**SUMMONS**

| | |
|---|---|
| Attorney(s) | Soriano, Henkel, Biehl & Matthews, P.C. |
| Office Address | Frederick C. Biehl, III, Esq. |
| | 75 Eisenhower Parkway, Suite 110 |
| Town, State, Zip Code | Roseland, NJ 07068 |
| Telephone Number | (973) 364-0111 |
| Attorney(s) for Plaintiff | G & P Parlamas, Inc. |

**Superior Court of
New Jersey**

| | |
|---|---|
| Monmouth | COUNTY |
| Law | DIVISION |

G & P Parlamas, Inc.

Docket No:  L-1550-17

Plaintiff(s)

Vs.

The Travelers Indemnity of America

~~CORPORATE LITIGATION
HARTFORD
MAY 19 2017
RECEIVED PM~~

**CIVIL ACTION
SUMMONS**

Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

                                    Michelle M. Smith
                                    Clerk of the Superior Court

DATED:      05/18/2017

Name of Defendant to Be Served:    The Travelers Indemnity of America

Address of Defendant to Be Served:   One Tower Square, Hartford, Connecticut 06183

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

FREDERICK C. BIEHL, III, ESQ.
SORIANO, HENKEL, BIEHL & MATTHEWS
75 Eisenhower Parkway
Roseland, New Jersey 07068-1693
(973) 364-0111
N.J. Attorney I.D. 015851982
Attorneys for Plaintiff



|  |  |
|---|---|
| G & P PARLAMAS, INC., | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: MONMOUTH COUNTY |
| Plaintiff, | DOCKET NO. L 1550-17 |
| vs. | |
| | **CIVIL ACTION** |
| THE TRAVELERS INDEMNITY OF | |
| AMERICA, | |
| Defendant. | |

## COMPLAINT

Plaintiff, G&P Parlamas, Inc., by way of complaint through their counsel, Frederick C. Biehl, III, Esq. of Soriano, Henkel, Biehl & Matthews, P.C., hereby states and alleges as follows:

### NATURE OF ACTION

1.     Plaintiff, G&P Parlamas, Inc. ("Plaintiff" or "G&P"), is located at 1928 Heck Avenue, Neptune, New Jersey ("Property"). The Property suffered, *inter alia*, windstorm damage to the architectural mount to the right corner of the building located on the Property.

2.     Defendant, The Travelers Indemnity Company of America ("Defendant" or "Travelers"), is an insurance company engaged in writing commercial property and casualty insurance.

3.     The Plaintiff purchased a Commercial Property and Casualty Insurance Policy ("Policy") from Travelers that provided coverage for the damage Plaintiff sustained. The Policy

indicated that Travelers covered physical loss by or from a windstorm.

4.     The Property suffered windstorm damage.

5.     Despite clear language obligating it to pay Plaintiff, Travelers has unreasonably and in bad faith denied coverage for the windstorm damage to the Property.

## PARTIES

6.     Plaintiff, G&P, is a New Jersey corporation located at 1928 Heck Avenue, Neptune, New Jersey 07753.

7.     Defendant, Travelers, is a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut 06183.

## FACTS COMMON TO ALL CLAIMS

8.     Travelers sold and issued Insurance Policy Number QTH660-6G039980 (the "Policy") to G&P to cover losses to the Property.  See Exhibit "A" attached hereto.

9.     G&P paid all premiums when due.

10.    The Policy was in full force and effect when the Property suffered windstorm damage.

11.    G&P sustained substantial losses and damage to the Property, which was covered by the Travelers Policy issued to them.

12.    The damage to the Property exceeds One Hundred Thousand Dollars ($100,000.00).

13.    G&P reported the damage and properly submitted their claim for damages to Travelers.  The claim number is E4R1470.  Plaintiff duly performed all of the conditions of the Policy and fully complied with all provisions and investigations of their claims.

14.    The damage to the Property, which was fully covered by the Policy, requires

2

substantial repair otherwise the Property is unsafe and will suffer further damage.

15.    The damage to the Property included damage to an architectural mount on the right corner of the building from the windstorm.

16.    On July 20, 2016, Travelers sent G&P a letter denying coverage for the damage to the Property, despite the fact that the Policy covered such damage. See Exhibit "B" attached hereto. Plaintiff engaged its own engineer who concluded that the damage suffered was windstorm damage and on August 20, 2016 sent in additional documents and records related to the damage suffered. See Exhibit "C" attached hereto. As a result of G&P's document submittal, Travelers sent the claim to an appeals panel. The appeals panel sent the claim back to claims representative. See Exhibit "D" attached hereto. Travelers had their engineering expert evaluate the additional information sent to the claims representative. After such review, Travelers again denied G&P's claim. See Exhibit "E" attached hereto.

17.    Travelers, its agents, servants and employees improperly adjusted and denied Plaintiff's claims without an adequate investigation, even though Plaintiff's losses were covered by the Policy.

18.    Travelers failed to properly investigate windstorm damage.

19.    Travelers, its agents, servants and employees unjustifiably refused to perform their obligations under the Policy and wrongfully denied payment of Plaintiff's claim.

20.    Despite its contractual duty under the Policy to fairly and properly adjust this claim, Travelers failed and refused to compensate Plaintiff for its covered losses.

21.    Because Travelers failed to pay Plaintiff on its claim, Plaintiff has not been able to properly repair the damages to the Property. This has caused additional damages to Plaintiff that

3

were within the contemplation of the parties as a foreseeable consequence of Traveler's failure to perform its obligations under the Policy.

22. Defendant Travelers failed to properly adjust the claim and Defendant has denied the claim without an adequate investigation, even though the Policy provided coverage for losses such as those suffered by Plaintiff.

23. Because Defendant refuses to pay Plaintiff on Plaintiff's insurance claim, Plaintiff has not been able to repair the damages to Plaintiff's Property. This has caused additional further damage to Plaintiff.

24. To date, Plaintiff has not been paid for the damage sustained to the building.

25. Despite Plaintiff's compliance with all policy provisions, Defendant refuses to fairly adjust the claims for damage.

26. All conditions precedent to recover have been performed, waived, or have occurred.

27. Defendant failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant Travelers failed and refused to pay Plaintiff the correct amount of proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the cost to repair the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

28. Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendant's conduct constitutes a violation of the New Jersey Unfair Claims Settlement Practices Act.

4

29.     Defendant Travelers failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Defendant's conduct constitutes a violation of the New Jersey Unfair Claims Settlement Practices Act.

30.     Defendant Travelers refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Specifically, Defendant performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses to the Property. Defendant's conduct constitutes a violation of the New Jersey Unfair Claims Settlement Practices Act.

31.     Defendant Travelers failed to meet its obligations under the New Jersey Insurance Code regarding payment of claim without delay. Specifically, Defendant has delayed payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not yet received payment for the claim. Defendant's conduct constitutes violation of the New Jersey Unfair Claims Settlement Practices Act.

32.     From and after the time Plaintiffs' claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

33.     As a result of Defendant Traveler's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorneys and law firm who are representing Plaintiff with respect to these causes of action.

5

## FIRST COUNT
## BREACH OF CONTRACT

34.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 33 as if fully set forth herein.

35.    The Policy, at all times relevant and material to the case, constituted a contract between the Plaintiff and Travelers.

36.    Plaintiff fully performed under the contract by paying all premiums when due and by cooperating with Travelers regarding the claims. Plaintiff timely complied with all conditions precedent to their recovery herein, including making an appropriate and adequate demand.

37.    Travelers failed to perform and materially breached the insurance contract when it wrongfully failed to pay and refused to reimburse Plaintiff what it is owed for damages to the Property covered under the Policy. Travelers also breached the contract by failing to perform other obligations it owed Plaintiff under the Policy.

38.    By reason of Travelers' breach, including its failure to reimburse Plaintiff for the covered losses, Travelers is liable to and owes the Plaintiff for the actual damages it suffered as a result of Travelers' breach, all costs associated with recovering, repairing and/or replacing the covered property, including compensatory damages, in an amount to be established, together with interest and all other damages that Plaintiff may prove as allowed by law.

## SECOND COUNT
## BREACH OF GOOD FAITH AND FAIR DEALING

39.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 38 as if fully set forth herein.

40.    Travelers has a duty to deal fairly and in good faith with the Plaintiff. There is an

6

implied covenant of good faith and fair dealing in every insurance contract. This covenant obligates each party to the contract to refrain from taking any action or litigation position that would deprive the other of the benefits of the contract or cause undue hardship or harm to the other party. It also requires the insurer, *inter alia,* to investigate claims in good faith and to reasonably and promptly pay covered claims.

41.     Plaintiff timely complied with all conditions precedent to their recovery herein, including making an appropriate and adequate demand.

42.     By wrongfully denying payments to Plaintiff, Travelers breached the Policy, causing damage, including consequential damages.

43.     Travelers breached its duty to deal fairly and in good faith by engaging in conduct calculated to further its own economic interests at the expense of Plaintiff.

44.     This conduct includes misrepresenting to Plaintiff that Plaintiff's claim was not covered under the Policy even though the damage resulted from a covered cause of loss; conducting an unreasonable investigation of Plaintiff's claim; investigating Plaintiff's claim only to obtain facts supporting the claim denial that it had already decided to make; failing to meet its obligations pursuant to standard industry practices; and refusing to accept the facts and documentation supporting Plaintiff's claim.

45.     As a result of the foregoing, Travelers is liable to Plaintiff for compensatory and consequential damages in an amount Plaintiff may prove at trial, all costs associated with recovering, repairing, and replacing the damaged Property, attorneys' fees and expenses, together with all other damages Plaintiff may prove as allowed by law.

7

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant Travelers as follows:

A.      On Plaintiff's First Count for Breach of Contract as against Defendant, in an amount to be determined at trial for coverage under the Policy, compensatory damages and consequential damages, plus attorney fees, costs, interest, and for such other relief that the Court deems just and proper; and

B.      On Plaintiff's Second Count for Breach of the Covenant of Good Faith and Fair Dealing, in an amount to be determined at trial for compensatory damages, consequential damages, plus attorney fees, costs, interest, and for such other relief that the Court deems just and proper; and

SORIANO, HENKEL, BIEHL & MATTHEWS, PC

BY: _____
Frederick C. Biehl, III

DATED: April 20, 2017

8

## JURY DEMAND

Plaintiff, G&P Parlamas, Inc., hereby demands trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4,   Frederick C. Biehl, III, Esq. is hereby designated as trial counsel for the plaintiff, G&P Parlamas, Inc.

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and I am not aware of any person who should be joined in this matter.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

_____
Frederick C. Biehl, III

DATED: April 20 , 2017

9


**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

```
                              TRAVELERS CORP. TEL: 1-800-328-2189
                              COMMERCIAL INLAND MARINE
                              COMMON POLICY DECLARATIONS
                              ISSUE DATE: 11/30/15
                              POLICY NUMBER: QT-660-6G039980-TIA-16
        INSURING COMPANY:
        THE TRAVELERS INDEMNITY COMPANY OF AMERICA

        1. NAMED INSURED AND MAILING ADDRESS:
           G & P PARLAMAS INC. (AS PER IL T8 00)
           1928 HECK AVENUE
           NEPTUNE, NJ 07753


        2. POLICY PERIOD: From 02/22/16 to 02/22/17 12:01 A.M. Standard Time at
                                                         your mailing address.
        3. LOCATIONS
           Premises  Bldg.
           Loc. No.  No.  Occupancy          Address

           SEE IL T0 03


        4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
           COMMERCIAL PROPERTY COV PART DECLARATIONS         CP T0 11 01 03 TIA
           COMMERCIAL INLAND MARINE COV PART DECLARATIONS    CM T0 01 07 86 TIA



        5. NUMBERS OF FORMS AND ENDORSEMENTS
           FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

        6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
                                   containing its complete provisions:
           Policy                      Policy No.                 Insuring Company


           DIRECT BILL
        7. PREMIUM SUMMARY:
           Provisional Premium   $ 9,848
           Due at Inception      $
           Due at Each           $

        NAME AND ADDRESS OF AGENT OR BROKER:       COUNTERSIGNED BY:
           GLOBAL INDEMNITY INS (RX332)
           20 HIGHLAND AVENUE
           METUCHEN, NJ 08840                       Authorized Representative

                                                    DATE:

        IL T0 02 11 89(REV. 09-07)    PAGE 1 OF 2
        OFFICE: EDISON
```

# EXHIBIT A

**TRAVELERS**

**Report Claims Immediately by Calling\***
**1-800-238-6225**
*Speak directly with a claim professional*
*24 hours a day, 365 days a year*

\*Unless Your Policy Requires **Written** Notice or Reporting

## COMMERCIAL INSURANCE

**A Custom Insurance Policy Prepared for:**

**G & P PARLAMAS INC.**
**1928 HECK AVENUE**
**NEPTUNE NJ 07753**

Presented by: GLOBAL INDEMNITY INS.

000268


**TRAVELERS**

TAXES AND SURCHARGES

POLICY NUMBER: QT-660-6G039980-TIA-16

EFFECTIVE DATE: 02/22/16

ISSUE DATE: 11/30/15

| DESCRIPTION | AMOUNT |
|---|---|
| NEW JERSEY GUARANTY FUND SURCHARGE - ALL OTHER | 69.00 |

IL TO 02 11 89      PAGE  2 OF  2

OFFICE: EDISON            06H
PRODUCER NAME: GLOBAL INDEMNITY INS            RX332

000270


**TRAVELERS**

POLICY NUMBER: QT-660-6G039980-TIA-16

EFFECTIVE DATE: 02-22-16

ISSUE DATE: 11-30-15

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL TO 02 11 89    COMMON POLICY DECLARATIONS
IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL TO 01 01 07    COMMON POLICY CONDITIONS
IL TO 03 04 96    LOCATION SCHEDULE
IL T8 00          GENERAL PURPOSE ENDORSEMENT


PN EB 05 08 10    NJ JURISDICTIONAL INSPECTIONS NOTICE
```

COMMERCIAL PROPERTY

```
CP TO 11 01 03    COMMERCIAL PROPERTY DECLARATIONS
CP 03 20 10 92    MULTIPLE DEDUCTIBLE FORM
CP TO 00 02 11    TABLE OF CONTENTS COMMERCIAL PROPERTY
CP 00 90 07 88    COMMERCIAL PROPERTY CONDITIONS
CP T1 00 01 03    BUILDING & PERSONAL PROPERTY COV FORM
CP T1 04 01 03    BUSINESS INCOME COV FORM W/EE
CP T1 08 01 03    CAUSES OF LOSS-SPECIAL FORM
CP T3 68 09 06    FUNGUS,ROT,BACTERIA CAUSES OF LOSS
CP T3 82 02 04    CAUSES OF LOSS - EQUIPMENT BREAKDOWN
CP T3 97 10 07    BUSINESS INCOME-PERS.PROP. IN THE OPEN
CP T3 81 01 15    FEDERAL TERRORISM RISK INSURANCE ACT DIS
```

INLAND MARINE

```
CM AO 28 08 96    IMPAK COVERAGE PART DECLARATIONS
CM T3 71 08 96    IM PAK COVERAGE SUMMARY
CM TO 28 08 96    IM PAK COV CONTRACTORS EQUIP SCHEDULE
CM TO 11 08 05    TABLE OF CONTENTS
CM 00 01 09 04    COMMERCIAL INLAND MARINE CONDITIONS
CM T1 43 08 96    IMPAK COVERAGE FORM
CM T3 98 01 15    FEDERAL TERRORISM RISK INSURANCE ACT DIS
CM T5 60 01 10    BLANKET LOSS PAYEES
```

INTERLINE ENDORSEMENTS

```
IL T4 12 03 15    AMNDT COMMON POLICY COND-PROHIBITED COVG
IL T4 14 01 15    CAP ON LOSSES CERTIFIED ACT OF TERRORISM
IL T3 82 05 13    EXCL OF LOSS DUE TO VIRUS OR BACTERIA
IL O1 11 11 03    NEW JERSEY CHANGES
IL 02 08 09 07    NJ CHANGES-CANCELLATION AND NONRENEWAL
IL T3 55 05 13    EXCLUSION OF CERTAIN COMPUTER LOSSES
```

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.

5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at

000272

the time the policy was issued. On each renewal continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Equipment Breakdown Equivalent to Boiler and Machinery**

On the Common Policy Declarations, the term Equipment Breakdown is understood to mean and include Boiler and Machinery and the term Boiler and Machinery is understood to mean and include Equipment Breakdown.

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that declarations form.

In return for payment of the premium, we agree with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

One of the companies listed below (each a stock company) has executed this policy, and this policy is countersigned by the officers listed below:

The Travelers Indemnity Company (IND)

The Phoenix Insurance Company (PHX)

The Charter Oak Fire Insurance Company (COF)

Travelers Property Casualty Company of America (TIL)

The Travelers Indemnity Company of Connecticut (TCT)

The Travelers Indemnity Company of America (TIA)

Travelers Casualty Insurance Company of America (ACJ)

*Wendy C. Sky*

Secretary

*Brian Mac Lean*

President

Includes the copyrighted material of Insurance Services Office, Inc. with its permission.     **IL T0 01 01 07** (Rev. 08-09)

**LOCATION SCHEDULE**  **POLICY NUMBER:** QT-660-6G039980-TIA-16

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
02-22-16 to 02-22-17 .

| Loc.<br>No. | Bldg.<br>No. | Address | Occupancy |
|---|---|---|---|
| 1 | 2 | VARIOUS<br>ALLENHURST, NJ 07711 | SEE IM PAK DECLARATIONS |
| 2 | 1 | 1928 HECK AVENUE<br>NEPTUNE, NJ 07753 | OFFICE |

**IL T0 03 04 96**

Page    1  (END)

000273

POLICY NUMBER: QT-660-6G039980-TIA-16          GENERAL PURPOSE ENDORSEMENT

ITEM #1 - NAMED INSURED TO READ:

G & P PARLAMAS INC
CHROMATOUCH PAINTING INC.
PARBILT CONSTRUCTION CORP.
PARLAMAS CONSTRUCTION LLC
PARLAMAS REALTY LLC
PARLAMAS ASSOCIATES LLC

# COMMERCIAL PROPERTY



# COMMERCIAL PROPERTY

**TRAVELERS** One Tower Square, Hartford, Connecticut 06183

**COMMERCIAL PROPERTY**
**COVERAGE PART DECLARATIONS**

**POLICY NUMBER:** QT-660-6G039980-TIA-16
**ISSUE DATE:** 11-30-15

INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

DECLARATIONS PERIOD: From 02/22/16 to 02/22/17 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial Property Coverage Part consists of these Declarations and the attached Supplemental Declaration(s), Schedule(s), Table of Contents, Commercial Property Conditions, the Coverage Form(s), the Cause of Loss Form(s) and endorsements.

1. COVERAGE - Insurance applies only to premises location(s) and building number(s) shown below for the coverage(s), optional coverage(s) or coverage option(s) indicated in this Declarations or specified in any endorsements attached to this Coverage Part.

2. DEDUCTIBLE - The following deductible applies unless a different or more specific deductible is indicated within this Declarations or by endorsement.

   $  1,000 per occurrence

PREMISES LOCATION NO. 0002    BUILDING NO. 0001

DEDUCTIBLE: see CP 03 20

| COVERAGE | | LIMIT OF INSURANCE | COINSURANCE | CAUSES OF LOSS |
|---|---|---|---|---|
| Building Replacement Cost applies | $ | 983,454 | 90% | Special |
| Your Business Personal Property Replacement Cost applies | $ | 241,491 | 90% | Special |
| Business Income And Extra Expense Rental Value Only Ordinary Payroll is included Period of Restoration - Time Period: 72 hours Civil Authority - Time Period: 72 hours Civil Authority Coverage Period: 21 consecutive days Extended Business Income: 30 days | $ | 39,337 | 100% | Special |

CP T0 11 01 03



**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**COMMERCIAL PROPERTY**
**COVERAGE PART DECLARATIONS**

**POLICY NUMBER:** QT-660-6G039980-TIA-16
**ISSUE DATE:** 11-30-15

SUPPLEMENTAL DECLARATIONS

ADDITIONAL COVERAGES & COVERAGE EXTENSIONS

The following Additional Coverages and Coverage Extensions are provided under the Coverage Form(s) listed below for the Limits of Insurance shown. These Limits of Insurance apply in any one occurrence unless otherwise stated.

Some of these Additional Coverages and Coverage Extensions, or the applicable Limits of Insurance, may be modified by endorsements attached to this policy. There may also be other Additional Coverages or Coverage Extensions within your policy. Please read it carefully.

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

| Additional Coverages | | Limit of Insurance |
|---|---|---|
| Debris Removal | | |
|   - Additional Amount at each described premises | $ | 25,000 |
| Pollutant Cleanup and Removal | | |
|   - 12 Month Aggregate Limit | $ | 25,000 |
| Preservation of Property | | Policy Limit |
| Fire Department Service Charge | $ | 5,000 |
| Reward Coverage | | |
|   - Maximum Limit | $ | 5,000 |
| Increased Cost of Construction | | |
|   - At each described premises | $ | 10,000 |
| Fire Protective Equipment Discharge | $ | 5,000 |

Coverage Extensions

| | | |
|---|---|---|
| Newly Acquired or Constructed Property | | |
|   - Each Building | $ | 500,000 |
|   - Personal Property in total, at each premises | $ | 250,000 |
| Personal Effects and Property of Others | | |
|   - At each described premises | $ | 10,000 |
|   - Any one employee | $ | 2,500 |
| Valuable Papers and Records | | |
|   - At each described premises | $ | 10,000 |
| Property Off-Premises | | |
|   - At any installation premises or temporary storage premises while awaiting installation | $ | 10,000 |
|   - At any other premises you do not own, lease, or regularly operate including fairs, trade shows and "exhibitions" | $ | 25,000 |
| Temporary Relocation of Property | $ | 50,000 |
| Outdoor Property | $ | 10,000 |
|   - Any one tree, shrub or plant | $ | 500 |
|   - Any one antenna | $ | 2,500 |
| Claim Data Expense | $ | 2,500 |

CP T0 11 01 03

PRODUCER: GLOBAL INDEMNITY INS     RX332     OFFICE: EDISON     06H

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**COMMERCIAL PROPERTY**  
**COVERAGE PART DECLARATIONS**

**POLICY NUMBER:** QT-660-6G039980-TIA-16  
**ISSUE DATE:** 11-30-15

BUILDING AND PERSONAL PROPERTY COVERAGE FORM (continued)

| Coverage Extensions | | Limit of Insurance |
|---|---|---|
| Extra Expense (including Expediting Expenses) | $ | 2,500 |
| Accounts Receivable | | |
|    - At each described premises | $ | 10,000 |
| Non-Owned Detached Trailers | $ | 5,000 |
| Outside Signs | $ | 2,500 |
| Covered Property in Transit | $ | 10,000 |
| Duplicate Electronic Data Processing Data & Media | $ | 10,000 |
| Electronic Data Processing Equipment and Data & Media - Limited | $ | 10,000 |
| Theft Damage to Rented Property | | Policy Limit |

BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

| Additional Coverages | | Limit of Insurance |
|---|---|---|
| Alterations and New Buildings | | Policy Limit |
| Interruption of Computer Operations - Aggregate Limit | $ | 25,000 |
| Delayed Net Income Loss | | Policy Limit |

Coverage Extensions

| | | |
|---|---|---|
| Newly Acquired Locations | $ | 250,000 |
| Claim Data Expense | $ | 2,500 |

CP T0 11 01 03

000277  PRODUCER: GLOBAL INDEMNITY INS          RX332     OFFICE: EDISON          06H

POLICY NUMBER: QT-660-6G039980-TIA-16

COMMERCIAL PROPERTY
ISSUE DATE: 11-30-15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

This endorsement modifies Insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE*

The Deductibles applicable to any one occurrence are shown below:

| Prem No. | Bldg. No. | Deductible | | Covered Causes of Loss** |
|----------|-----------|------------|---|--------------------------|
| 2 | 1 | 2,500 | 5 | |



*Information required to complete this Schedule, if not shown on this endorsement, will be shown In the Declarations.

**For each deductible listed in this schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss
(2) All Covered Causes of Loss except Windstorm or Hail
(3) All Covered Causes of Loss except Theft
(4) All Covered Causes of Loss except Windstorm or Hail and Theft
(5) Windstorm or Hail
(6) Theft

The following is added to the DEDUCTIBLE Section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

**CP 03 20 10 92**       Copyright, ISO Commercial Risk Services, Inc., 1983, 1989       Page 1 of 1

000278

**TABLE OF CONTENTS**

# COMMERCIAL PROPERTY COVERAGE PART

**The following indicates the contents of the principal Forms which may be attached to your policy. It contains no reference to the Declarations or Endorsements which also may be attached.**

Page No. Varies By Form

COMMERCIAL PROPERTY CONDITIONS

    A.  Concealment, Misrepresentation or Fraud
    B.  Control Of Property
    C.  Insurance Under Two or More Coverages
    D.  Legal Action Against Us
    E.  Liberalization
    F.  No Benefit to Bailee
    G.  Other Insurance
    H.  Policy Period, Coverage Territory
    I.  Transfer of Rights of Recovery Against Others to Us

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

    A.  Coverage
    B.  Exclusions and Limitations
    C.  Limits of Insurance
    D.  Deductible
    E.  Loss Conditions
    F.  Additional Conditions
    G.  Optional Coverages
    H.  Definitions

CAUSES OF LOSS – BASIC FORM

    A.  Covered Causes of Loss
    B.  Exclusions
    C.  Limitations
    D.  Definitions

CAUSES OF LOSS – BROAD FORM

    A.  Covered Causes of Loss
    B.  Exclusions
    C.  Limitations
    D.  Additional Coverage – Collapse
    E.  Definitions

CAUSES OF LOSS – SPECIAL FORM

    A.  Covered Causes of Loss
    B.  Exclusions
    C.  Limitations
    D.  Additional Coverage – Collapse
    E.  Additional Coverage Extensions
    F.  Definitions

BUSINESS INCOME COVERAGE FORM

    A.  Coverage
    B.  Covered Causes of Loss, Exclusions and Limitations
    C.  Limits of Insurance
    D.  Loss Conditions
    E.  Additional Condition
    F.  Optional Coverages
    G.  Definitions

BUILDERS' RISK COVERAGE FORM

    A.  Coverage
    B.  Exclusions and Limitations
    C.  Limits of Insurance
    D.  Deductible
    E.  Loss Conditions
    F.  Additional Conditions
    G.  Definition

CONDOMINIUM ASSOCIATION COVERAGE FORM

    A.  Coverage
    B.  Exclusions and Limitations
    C.  Limits of Insurance
    D.  Deductible
    E.  Loss Conditions
    F.  Additional Conditions
    G.  Optional Coverages
    H.  Definition

CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

    A.  Coverage
    B.  Exclusions and Limitations
    C.  Limits of Insurance
    D.  Deductible
    E.  Loss Conditions
    F.  Additional Condition
    G.  Optional Coverages
    H.  Definitions

000279

COMMERCIAL PROPERTY

## TABLE OF CONTENTS (Cont'd)

Page No. Varies By Form

**EXTRA EXPENSE COVERAGE FORM**

- A. Coverage
- B. Covered Causes of Loss, Exclusions and Limitations
- C. Limits of Insurance
- D. Loss Conditions
- E. Definitions

**LEGAL LIABILITY COVERAGE FORM**

- A. Coverage
- B. Exclusions
- C. Limits of Insurance
- D. Loss Conditions
- E. Additional Conditions
- F. Definition

**MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM**

- A. Coverage
- B. Exclusions
- C. Limitations
- D. Limits of Insurance
- E. Deductible
- F. Additional Coverage -- Collapse
- G. Additional Coverage -- Limited Coverage for "Fungus", Wet Rot or Dry Rot
- H. Additional Conditions
- I. Definitions

**LEASEHOLD INTEREST COVERAGE FORM**

- A. Coverage
- B. Exclusions
- C. Limits of Insurance
- D. Loss Conditions
- E. Additional Condition
- F. Definitions

**FORECLOSED PROPERTY COVERAGE FORM**

- A. Coverage
- B. Exclusions and Limitations
- C. Limits of Insurance
- D. Deductible
- E. Loss Conditions
- F. Additional Conditions
- G. Definitions

**SECURITY INTEREST ERRORS AND OMISSIONS COVERAGE FORM**

- A. Coverage
- B. Exclusions
- C. Limits of Insurance
- D. Deductible
- E. Commercial Property Conditions
- F. Loss Conditions
- G. Additional Conditions
- H. Definitions

**TOBACCO SALES WAREHOUSES COVERAGE FORM**

- A. Coverage
- B. Exclusions
- C. Limits of Insurance
- D. Deductible
- E. Loss Conditions
- F. Additional Conditions
- G. Definitions

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your Interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But

000280

COMMERCIAL PROPERTY

you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

a. Someone insured by this insurance;

b. A business firm:

   (1) Owned or controlled by you; or

   (2) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc. 1983, 1987     **CP 00 90 07 88**

# BUILDING AND PERSONAL PROPERTY
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION H – DEFINITIONS.**

## A.  COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

### 1.  Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.  Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Machinery and equipment permanently attached to the building or structure;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings;

**(d)** Lobby and hallway furnishings owned by you;

**(e)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering (not used for restaurant operations);

**(f)** Lawn maintenance and snow removal equipment; and

**(g)** Alarm systems;

**(5)** If not covered by other insurance:

**(a)** Alterations and repairs to the building or structure; and

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making alterations or repairs to the building or structure.

**b.  Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property–Separation of Coverage endorsement:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy or lease, but do not own; and

**(b)** You acquired or made at your expense but are not permitted to remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless coverage is otherwise provided for under Personal Property of Others.

Your Business Personal Property does not include "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media" except as provided under Sections **A.1.d.** "Electronic Data Processing Equipment" and **A.1.e.** "Electronic Data Processing Data and Media".

**c. Personal Property of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

However, our payment for loss of or damage to Personal Property of Others will only be for the account of the owner of the property.

Personal Property of Others does not include "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media" except as provided under Sections **A.1.d.** "Electronic Data Processing Equipment" and **A.1.e.** "Electronic Data Processing Data and Media".

**d. "Electronic Data Processing Equipment"** that you own or lease, or that is in your care, custody or control, while located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

**e. "Electronic Data Processing Data and Media"** that you own or lease, or that is in your care, custody or control, while located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

**2. Property Not Covered**

Unless the following property is added by endorsement to this Coverage Form, Covered Property does not include:

**a.** Accounts, bills, currency, other evidences of debt, money, notes, checks, drafts, securities or food stamps except as provided in the Accounts Receivable Cover-

age Extension. Lottery tickets held for sale are not securities;

**b.** Live animals, birds or fish, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Contraband, or property in the course of illegal transportation or trade;

**e.** The cost of excavations, grading, back filling or filling;

**f.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**g.** Water or land whether in its natural state or otherwise (including land on which the property is located), land improvements, growing crops, standing timber;

**h.** Aircraft or watercraft (other than watercraft owned by you while out of water at the described premises); and personal property while airborne or waterborne except as provided in the Covered Property In Transit Coverage Extension;

**i.** Bulkheads, pilings, piers, wharves, docks, dikes or dams;

**j.** Property that is covered under another Coverage Form of this or any other policy in which it is more specifically described, except for the excess over the amount due (whether you can collect on it or not) from that other insurance;

**k.** Underground pipes, flues, drains, tanks, tunnels all whether or not connected to buildings; mines or mining property;

**l.** The cost to research, replace or restore the information on "Valuable Papers and Records", except as provided in the Valuable Papers and Records – Cost of Research Coverage Extension;

**m.** Vehicles or self-propelled machines that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises;

but this paragraph does not apply to:

(a) Vehicles or self-propelled machines, other than automobiles, you manufacture, process, warehouse or hold for sale;

(b) Automobiles you manufacture, process or warehouse; or

(c) Trailers or Semi-Trailers, except as provided in (a) above or as provided for in the Coverage Extension for Non-Owned Detached Trailers;

n. The following property while outside of buildings:

(1) Harvested grain, hay, straw or other crops; or

(2) The following Outdoor Property, except as provided in the Outdoor Property Coverage Extension:

(a) Bridges, walks, roadways, patios or other paved surfaces;

(b) Retaining walls that are not part of the buildings described in the Declarations;

(c) Fences, trees, shrubs and plants (other than "stock" of trees, shrubs or plants), or lawns (including fairways, greens and tees); or

(d) Radio or television antennas (including microwave or satellite dishes) and their lead-in wiring, masts or towers;

o. The cost of restoring land or water;

p. Any "Electronic Data Processing Data and Media" which is obsolete or no longer used by you;

q. Outside signs, except as provided in the Outside Signs Coverage Extension; or

r. Additions under construction except as provided in the Newly Acquired or Constructed Property Coverage Extension.

**3. Covered Causes of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4. Additional Coverages**

Each of these Additional Coverages is additional insurance unless otherwise indicated.

Unless otherwise indicated in the Declarations or by endorsement, the following Additional Coverages apply:

**a. Debris Removal**

(1) We will pay your expense to remove debris of Covered Property, other than outdoor property as included in the Outdoor Property Coverage Extension, caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

This Additional Coverage does not apply to:

(a) Costs to extract "pollutants" from land or water; or

(b) Costs to remove, restore or replace polluted land or water.

(2) Except as provided in (3) below, payment for Debris Removal is included within the applicable Limit of Insurance shown in the Declarations. The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this Coverage Part applicable to that loss or damage.

(3) When the debris removal expense exceeds the 25% limitation in (2) above or when the sum of the debris removal expense and the amount we pay for the direct physical loss of or damage to Covered Property exceeds the applicable Limit of Insurance, we will pay an additional amount for debris removal expense up to $25,000, for each of your premises, in any one occurrence.

**b. Pollutant Cleanup and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises, if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss which occurs:

(1) On the described premises;

(2) To Covered Property; and

**(3)** During the policy period.

The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage is $25,000 for the sum of all covered expenses arising out of all Covered Causes of Loss occurring during each separate 12 month period of this policy beginning with the effective date of this policy.

**c. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for:

**(1)** The necessary and reasonable expenses actually incurred by you to remove the Covered Property from the described premises, temporarily store the Covered Property at another location and to move the Covered Property back to the described premises; and

**(2)** Any direct physical loss or damage to Covered Property while it is being moved from a described premises, while temporarily stored at another location or while being moved back to the described premises.

However, this Additional Coverage will only apply if the loss or damage occurs within 90 days after the Covered Property is first moved and will cease when the policy is amended to provide insurance at the new location, the Covered Property is returned to the existing location or this policy expires, whichever occurs first.

Payments under this Additional Coverage will not increase the applicable Limit of Insurance.

**d. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**e. Reward Coverage**

We will reimburse you for rewards you have incurred for information leading to:

**(1)** The successful return of undamaged stolen Covered Property to a law enforcement agency; or

**(2)** The arrest and conviction of any person who has damaged or stolen any of your Covered Property.

We will pay 25% of the covered loss (prior to the application of any applicable deductible and recovery of undamaged stolen Covered Property) up to a maximum of $5,000 in any one occurrence for the payments of rewards you make. These reward payments must be documented. No deductible applies to this Additional Coverage.

**f. Increased Cost of Construction or Repair**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to buildings that are Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **f.(3)** through **f.(8)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **f.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

CP T1 00 01 03

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage at each of your described premises is $10,000 in any one occurrence.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay the Increased Cost of Construction or Repair:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction or Repair, subject to the provisions of **f.(6)** of this Additional Coverage, is the increased cost of construction or repair at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction or Repair, subject to the provisions of **f.(6)** of this Additional Coverage, is the increased cost of construction or repair at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**g. Fire Protective Equipment Discharge**

If fire protective equipment discharges accidentally or to control a Covered Cause of Loss we will pay your cost to:

**(1)** Refill or recharge the system with the extinguishing agents that were discharged; and

**(2)** Replace or repair faulty valves or controls which caused the discharge.

The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**5. Coverage Extensions**

Each of these Coverage Extensions is additional insurance unless otherwise indicated.

Unless otherwise indicated in the Declarations or by endorsement, the following Coverage Extensions apply:

**a. Newly Acquired or Constructed Property**

We will pay for direct physical loss or damage by a Covered Cause of Loss to:

**(1) Buildings:**

**(a)** Your new buildings or additions to existing buildings insured under this Coverage Part while being built on the described premises or newly acquired premises including materials, equipment, supplies and temporary structures, on or within 1,000 feet of the premises; and

**(b)** Buildings you acquire at the described premises or at locations other than the described premises.

The most we will pay for loss or damage to this building property in any one occurrence is $500,000 at each building.

**(2) Your Business Personal Property, Personal Property of Others, Elec-**

tronic Data Processing Equipment, and Electronic Data Processing Data and Media:

(a) If a Limit of Insurance is shown in the Declarations for Your Business Personal Property, Personal Property of Others, "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media", you may extend that insurance to apply to that type of property at:

(i) A building you newly acquire at a location described in the Declarations; or

(ii) At any other location you acquire by purchase or lease (other than at fairs, trade shows or exhibitions).

The most we will pay for loss or damage to all types of property described above in any one occurrence is $250,000 in total at each location.

(3) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires;

(b) 90 days expire after you acquire or begin to construct the property;

(c) You report values to us; or

(d) The property is more specifically insured.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

b. **Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to the following types of property only while on the described premises:

(1) Personal effects or "Fine Arts" owned by you, your officers, your partners, your managers or your employees.

(2) Personal property (other than personal effects, "Fine Arts", "Electronic Data Processing Equipment" or

"Electronic Data Processing Data and Media") owned by;

(a) Your employees, for not more than $2,500 for any one employee; or

(b) Others, and in your care, custody or control.

The most we will pay for loss or damage under this Extension in any one occurrence is $10,000 at each described premises. The direct physical loss or damage must be caused by a Covered Cause of Loss. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c. **Valuable Papers and Records – Cost of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "Valuable Papers and Records" for which duplicates do not exist.

The most we will pay under this Extension in any one occurrence is $10,000 at each described premises. The direct physical loss or damage must be caused by a Covered Cause of Loss.

d. **Property Off-Premises**

(1) You may extend the insurance that applies to your Covered Property and Covered Personal Property of Others to apply to direct physical loss or damage by a Covered Cause of Loss to such property while temporarily away from the described premises:

(a) At any fair, trade show or "exhibition" within the Coverage Territory at a premises you do not own, lease or regularly operate;

(b) At installation premises or temporary storage premises while awaiting installation within the Coverage Territory that you do not own, lease or regularly operate. This coverage applies only to such property that will or has become a permanent part of an installation project being performed for others by you or on

your behalf. This coverage will end when any of the following first occurs:

(i) Your interest in the property ceases;

(ii) The installation is accepted;

(iii) The installation is abandoned;

(iv) The property is more specifically insured; or

(v) This policy is cancelled or expires, whichever occurs first; or

(c) At any other premises within the Coverage Territory that you do not own, lease or regularly operate.

(2) This Extension does not apply to:

(a) Property in due course of transit;

(b) Property to which the Temporary Relocation of Property or the Duplicate Electronic Data Processing Data and Media Coverage Extensions apply; or

(c) Property sold by you under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers.

(3) The most we will pay for loss or damage in any one occurrence under this Extension is $25,000, but we will not pay more than $10,000 at any installation premises or temporary storage premises while awaiting installation.

e. **Temporary Relocation of Property**

If Personal Property for which a Limit of Insurance is shown in the Declarations is removed from the described premises and stored temporarily at another location you own, lease or operate while the described premises is being renovated or remodeled, we will pay for direct physical loss or damage to that stored property:

(1) Caused by or resulting from a Covered Cause of Loss;

(2) Up to $50,000 in any one occurrence; and

(3) During the storage period of up to 90 consecutive days, but not beyond the expiration date of this policy.

This Extension does not apply if the stored property is more specifically insured.

f. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor property described below on the described premises, as follows:

(1) Fences, retaining walls that are not part of a building, lawns (including fairways, greens, and tees), trees, shrubs and plants, (other than "stock" of trees, shrubs, or plants), bridges, walks, roadways, patios, or other paved surfaces for loss or damage by the following causes of loss, if they are a Covered Cause of Loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion;

(e) Aircraft;

(f) Falling Objects;

(g) Sinkhole Collapse; or

(h) Volcanic Action.

(2) Radio and television antennas (including microwave or satellite dishes) for loss or damage by the following causes of loss, if they are a Covered Cause of Loss:

(a) A cause of loss listed in (1)(a) through (1)(h) above;

(b) Windstorm or hail;

(c) Vehicles; or

(d) Vandalism.

The most we will pay under this Extension in any one occurrence is $10,000, but we will not pay more than $500 for any one tree, shrub or plant nor more than $2,500 for any one antenna.

We will also pay your necessary and reasonable expense that you incur to remove debris of Outdoor Property shown under f.(1) and f.(2) above at your described premises caused by or resulting

from a Covered Cause of Loss listed above that occurs during the policy period. Such expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage. This will not increase the Limits of Insurance that apply to this Extension.

### g. Claim Data Expense

You may extend the insurance provided by this Coverage Form to apply to the expense you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals and preparing other documentation to show the extent of loss. The most we will pay for preparation of claim data under this Extension in any one occurrence is $2,500. We will not pay for:

(1) Any expenses incurred, directed, or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries;

(2) Any costs as provided in the Loss Condition — Appraisal; or

(3) Any expenses incurred, directed, or billed by or payable to insurance brokers or agents, or their associates or subsidiaries, without our written consent prior to such expenses being incurred.

### h. Extra Expense (Including Expediting Expenses)

In the event of covered loss or damage, you may extend the insurance provided by this Coverage Form to apply to:

(1) The necessary and reasonable extra expense you incur to continue as nearly as possible your normal business operation; and

(2) The necessary and reasonable additional expenses you incur to make temporary repairs, or expedite permanent replacement at the premises sustaining loss or damage. Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

The most we will pay in total in any one occurrence under this Extension is $2,500.

### i. Accounts Receivable

You may extend the insurance that applies to Your Business Personal Property to apply to the following loss and expenses resulting from direct physical loss or damage by a Covered Cause of Loss to your accounts receivable records (including those on electronic data processing media). Credit card company charge media will be considered accounts receivable until delivered to the credit card company.

(1) We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts; and

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage.

(2) The most we will pay in any one occurrence under this Extension is $10,000 for all loss and expense at each described premises.

### j. Non-Owned Detached Trailers

(1) You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage by a Covered Cause of Loss to trailers or semi-trailers that you do not own, provided that:

(a) The trailer or semi-trailer is used in your business;

(b) The trailer or semi-trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer or semi-trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer or semi-trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or mo-

torized conveyance is in motion; or

(b) During hitching or unhitching operations, or when a trailer or semi-trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage in any one occurrence under this Extension is $5,000.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**k. Outside Signs**

You may extend the insurance that applies to Building or Your Business Personal Property to apply to direct physical loss or damage by a Covered Cause of Loss to outside signs, whether or not attached to buildings, on or within 1,000 feet of the described premises.

The most we will pay for loss or damage in any one occurrence under this Extension is $2,500.

**l. Covered Property In Transit**

(1) You may extend the insurance that applies to Covered Property to apply to direct physical loss or damage by a Covered Cause of Loss to such property while in due course of transit at your risk within the Coverage Territory.

(2) When the Causes of Loss – Special Form is applicable, the Earth Movement exclusion and the Water exclusion do not apply to this Extension.

(3) The exclusion of personal property while airborne or waterborne under Section **A.2.** Property Not Covered, does not apply to this Extension, but the insurance provided under this Extension for property while waterborne is limited as provided in paragraph **(4) (c)** below.

(4) This Extension does not apply to:

(a) Property within 1000 feet of the described premises;

(b) Property shipped by mail;

(c) Property while waterborne, except in regular ferry operations in the course of being moved by other means of transportation, and then to include General Average and Salvage Charges for which you become liable;

(d) Export shipments once:

(i) The shipment is loaded on board the export conveyance; or

(ii) Coverage under an Ocean Marine or other insurance policy covering the shipment begins;

whichever is earlier;

(e) Import shipments prior to:

(i) The shipment being unloaded from the import conveyance; or

(ii) Coverage under an Ocean Marine or other insurance policy covering the shipment ends;

whichever is later;

(f) Property of others for which you are responsible while acting as a common or contract carrier, freight forwarder, freight consolidator, freight broker or public warehouseman;

(g) Property sold by you under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers; or

(h) Tools, equipment, supplies and materials all used for service or repair in your business which are kept in a motor vehicle. However, this does not apply to property in the care, custody or control of your sales representatives.

(5) The following additional exclusion applies to this Extension when the Causes of Loss – Special Form applies to this Coverage Form:

We will not pay for loss or damage by theft from a conveyance or container while unattended unless the portion of the conveyance or con-

tainer containing the Covered Property is fully enclosed and securely locked, and the theft is by forcible entry of which there is visible evidence.

(6) The most we will pay for loss or damage in any one occurrence under this Extension is $10,000.

m. **Duplicate Electronic Data Processing Data and Media**

(1) You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage by a Covered Cause of Loss to duplicates of your "Electronic Data Processing Data and Media" while stored in a separate, unattached building from where your original "Electronic Data Processing Data and Media" are kept.

(2) The most we will pay for loss or damage in any one occurrence under this Extension is $10,000.

n. **Electronic Data Processing Equipment and Data and Media – Limited**

This Extension only applies when a Limit of Insurance is not stated in the Declarations for "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media".

(1) If a Limit of Insurance is shown in the Declarations for Your Business Personal Property, you may extend that insurance to apply to direct physical loss or damage by a Covered Cause of Loss to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

(2) The most we will pay for loss or damage in any one occurrence under this Extension is $10,000.

o. **Theft Damage to Rented Property**

You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage by theft or attempted theft to that part of any non-owned building at the described premises you occupy and which contains the Covered Property, and to property within the non-owned building used for maintenance or service of the non-owned building.

This Extension applies only if you are a tenant and are required in your lease to cover this exposure.

We shall not be liable under this Extension for damage by fire or explosion, or to glass (other than glass building blocks) or to any lettering, ornamentation or burglar alarm tape on glass.

Payment under this Extension will not increase the Limit of Insurance that applies to Your Business Personal Property at the premises where the direct physical loss or damage occurs.

The Additional Condition, Coinsurance, does not apply to these Extensions.

B. **EXCLUSIONS AND LIMITATIONS**

See applicable Causes of Loss Form as shown in the Declarations.

C. **LIMITS OF INSURANCE**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, this Coverage Form or any endorsements applicable to this Coverage Form.

D. **DEDUCTIBLE**

Unless otherwise indicated, we will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance Additional Condition.

If more than one deductible applies to loss or damage in any one occurrence, we will apply each deductible separately. But the total of all deductible amounts applied in any one occurrence will not exceed the largest applicable deductible.

E. **LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. You must see that the following are done in the event of loss or damage:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      (5) At our request, give us complete inventories of the damaged and undamaged property. Include quanti-

ties, costs, values and amount of loss claimed.

      (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

         Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

      (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      (8) Cooperate with us in the investigation or settlement of the claim.

   b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

   a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

      (1) Pay the value of lost or damaged property;

      (2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

      (3) Take all or any part of the property at an agreed or appraised value; or

      (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

      We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

   b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordi-

nance or law regulating the construction, use or repair of any property, except as provided under the Increased Cost of Construction or Repair Additional Coverage.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owner's property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

   (1) We have reached agreement with you on the amount of loss; or

   (2) An appraisal award has been made.

h. At our option, we may make a partial payment toward any claims, subject to the policy provisions and our normal adjustment process. To be considered for a partial claim payment, you must submit a partial sworn proof of loss with supporting documentation. Any applicable deductibles must be satisfied before any partial payments are made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property.

a. We will pay:

   (1) Recovery expense; and

   (2) Costs to repair the recovered property;

b. But the amount we pay will not exceed:

   (1) The total of a.(1) and a.(2) above;

   (2) The value of the recovered property; or

   (3) The Limit of Insurance;

   whichever is less.

**6. Valuation**

We will determine the value of Covered Property in the event of covered loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d., e., f., g., h., i., j., k., l.,** and **m.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $5,000 or less, we will pay the cost of building repairs or replacement.

   The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property except as provided under the Increased Cost of Construction or Repair Additional Coverage.

   However, the following property will be valued at the actual cash value even when attached to the building:

   (1) Awnings or floor coverings;

   (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

   (3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

   (1) Actual cash value of the lost or damaged property if you make repairs promptly.

   (2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**CP T1 00 01 03**

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. "Valuable Papers and Records" at the cost of:

(1) Blank materials for reproducing the papers and records; and

(2) Labor to transcribe or copy the papers and records when there is a duplicate, but only if the papers and records are actually transcribed or copied.

g. "Fine Arts" at the least of:

(1) Market value at the time and place of loss;

(2) The cost of reasonably restoring that property; or

(3) The cost of replacing that property with substantially the same property.

h. Personal Property of Others at the amount you are liable not to exceed Actual Cash Value.

i. The value of Accounts Receivable will be determined as follows:

(1) If you cannot accurately establish the amount of Accounts Receivable outstanding as of the time of loss, we will:

(a) Determine the total of the average monthly amounts of Accounts Receivable for the 12 months immediately preceding the month in which the loss occurs; and

(b) Adjust that total for any normal fluctuations in the amount of Accounts Receivable for the month in which the loss occurred or for

any demonstrated variance from the average for that month.

(2) If you can accurately establish the amount of Accounts Receivable outstanding, that amount will be used in the determination of loss.

(3) The following will be deducted from the total amount of Accounts Receivable, however that amount is established:

(a) The amount of the accounts for which there is no loss;

(b) The amount of the accounts that you are able to re-establish or collect;

(c) An amount to allow for probable bad debts that you are normally unable to collect; and

(d) All unearned interest and service charges.

j. Stock in process at the cost of raw materials, and labor, plus the proper proportion of overhead charges.

k. "Electronic Data Processing Equipment" at replacement cost as of the time and place of loss, without deduction for physical deterioration, depreciation, obsolescence and depletion. However, in the event replacement of "Electronic Data Processing Equipment" with identical property is impossible, the replacement cost will be the cost of items that are similar to the damaged or destroyed equipment and intended to perform the same function, but which may include technological advances.

"Electronic Data Processing Equipment" that is obsolete or no longer used by you will be valued at actual cash value.

l. "Electronic Data Processing Data and Media" for which duplicates do not exist will be valued as follows:

(1) The cost of blank media; and

(2) Your cost to research, replace or restore the lost electronic data on lost, damaged or destroyed "Electronic Data Processing Data and Media", but only if the lost electronic data is actually replaced or restored.

m. Duplicate "Electronic Data Processing Data and Media" at the cost of:

(1) Blank media; and

(2) Labor to copy the electronic data, but only if the electronic data is actually copied.

## F. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Coinsurance

This Additional Condition does not apply to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" when a specific Limit of Insurance is shown for that coverage in the Declarations.

If a Coinsurance percentage is shown in the Declarations, the following condition applies when the loss or damage in any one occurrence is $5,000 or more.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and

(4) Subtract the deductible from the figure determined in step (3).

We will pay the amount determined in step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1** (Underinsurance):

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |

| | The Limit of Insurance for it is: | $120,000 |
|---|---|---|
| | The Deductible is: | $500 |
| | The amount of loss is: | $40,000 |

Step (1):  $250,000 x 80% =  $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):  $120,000/$200,000 =  .60

Step (3):  $40,000 x .60 =  $24,000

Step (4):  $24,000 - $500 =  $23,500

We will pay no more than $23,500. The remaining $16,500 is not covered.

**Example No. 2** (Adequate Insurance):

When:

| The value of the property is: | $250,000 |
|---|---|
| The Coinsurance percentage for it is: | 80% |
| The Limit of insurance for it is: | $200,000 |
| The Deductible is: | $500 |
| The amount of loss is: | $40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%).Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,500 ($40,000 amount of loss minus the deductible of $500).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:** (Underinsurance)

When:

The value of the property is:

| Bldg. at Location No. 1: | $75,000 |
|---|---|
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2 | $75,000 |
| Total Value: | $250,000 |
| The Coinsurance percentage for it is: | 90% |

| The Limit of Insurance for Buildings and Personal Property at Locations No. 1 and 2 is: | $180,000 |
|---|---|
| The Deductible is: | $1,000 |
| The amount of loss is: Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| Total amount of loss | $50,000 |

Step (1):   $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):   $180,000/$225,00          .80

Step (3):   $50,000 x .80 =        $40,000

Step (4):   $40,000 – $1,000 =      $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

## 2. Mortgageholders

a. The term, mortgageholder, includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so; and

   (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have

failed to comply with the terms of this Coverage Part:

   (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies.

b. The terms of this Optional Coverage apply only to loss or damage that occurs on or after the effective date of this Optional Coverage.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

   (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change

amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

If:

The applicable Limit
of Insurance is:                    $100,000

The annual percentage
increase is:                            8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is:

$100,000 X .08 X 146/365 = $3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces the term Actual Cash Value in provisions **a., e.** and **h.** of the Loss Condition, Valuation, in Section **E.6.** of this Coverage Form.

**b.** If you decide to repair or rebuild buildings which have sustained loss or damage, our payment will include any necessary and reasonable architectural, engineering, consulting or supervisory fees incurred in the repair or rebuilding. This will not increase the applicable Limits of Insurance.

**c.** This Optional Coverage does not apply to:

**(1)** Obsolete property, or property no longer used by you;

**(2)** Residential personal property or personal effects;

**(3)** Awnings or floor coverings;

**(4)** Outdoor equipment or furniture;

**(5)** "Stock", unless the including "Stock" option is shown in the Declarations; or

**(6)** "Vacant" buildings.

**d.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides, if you notify us of your intent to do so within 180 days after the loss or damage.

**e.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

This restriction does not apply to losses less than $5,000 in any one occurrence, other than losses to tenants' improvements and betterments.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **e.(1)** and **e.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Actual Cash Value Valuation Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**f.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)**, or **(3)**, subject to **g.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same premises, the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in f.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

g. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property except as provided under the Increased Cost of Construction or Repair Additional Coverage.

h. We will determine the value of patterns, dies, molds, and forms not in current usage at Actual Cash Value. If the loss is paid on an Actual Cash Value basis, and within 24 months from the date of the loss you need to repair or replace one or more of them, we will pay you, subject to the conditions of this Insurance, the difference between Actual Cash Value and Replacement Cost for those patterns, molds and dies which are actually repaired or replaced.

i. "Electronic Data Processing Equipment" at replacement cost as of the time and place of loss, without deduction for physical deterioration, depreciation, obsolescence and depletion. However, in the event replacement of "Electronic Data Processing Equipment" with identical property is impossible, the replacement cost will be the cost of items that are similar to the damaged or destroyed equipment and intended to perform the same function, but which may include technological advances.

"Electronic Data Processing Equipment" that is obsolete or no longer used by you will be valued at actual cash value.

j. "Electronic Data Processing Data and Media" for which duplicates do not exist will be valued as follows:

(1) The cost of blank media; and

(2) Your cost to research, replace or restore the lost electronic data on lost, damaged or destroyed "Electronic Data Processing Data and Media", but only if the lost electronic data is actually replaced or restored.

## H. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead). Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Stock" means merchandise held in storage or for sale, including supplies used in their packing or shipping.

3. "Exhibition" means the temporary display of personal property at a convention, exposition, trade show or similar event at a location you do not own, lease or regularly occupy.

4. "Fine Arts" means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property of rarity, historical value, or artistic merit.

5. "Electronic Data Processing Data and Media" means:

   a. Data stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on electronic data processing, recording or storage media such as hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment;

   b. The electronic media on which the data is stored; and

   c. Programming records and instructions used for "Electronic Data Processing Equipment".

6. "Electronic Data Processing Equipment" means any of the following equipment used in your data processing operations:

   a. Electronic data processing equipment, facsimile machines, word processors, multi-functional telephone equipment and laptop and portable computers; and

   b. Any component parts and peripherals of such equipment, including related surge protection devices.

"Electronic Data Processing Equipment" does not include equipment used to operate production type machinery or equipment.

7. "Vacant." See applicable Causes of Loss form as shown in the Declarations.

8. "Valuable Papers and Records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages. But "Valuable Papers and Records" does not include money, securities or "Electronic Data Processing Data and Media".

**CP T1 00 01 03**

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G – DEFINITIONS.**

## A. COVERAGE

### 1. Business Income

a. Business Income means the:

(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

(2) Continuing normal operating expenses incurred, including payroll.

b. Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(1) Business Income including "Rental Value".

(2) Business Income excluding "Rental Value".

(3) "Rental Value".

If option (1) above is selected, the term Business Income will include "Rental Value". If option (2) above is selected, the term Business Income excludes "Rental Value". If option (3) above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

c. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to property in the open or property in a vehicle, the described premises includes the area within 1,000 feet of the building at which the described premises is located.

d. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(1) The portion of the building which you rent, lease or occupy; and

(2) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

### 2. Extra Expense

a. Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

b. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and oper-

COMMERCIAL PROPERTY

ate the replacement location or temporary location; or

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense (including Expediting Expense) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

### 3. Additional Coverages

Unless otherwise stated, payments made under these Additional Coverages will not increase the applicable Limits of Insurance.

Unless otherwise indicated in the Declarations or by endorsement, the following Additional Coverages apply:

**a. Civil Authority**

We will pay for the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss or damage by a Covered Cause of Loss to property at locations, other than the described premises, that are within 100 miles of the described premises.

Unless a different time period and/or coverage period is indicated in the Declarations, the coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end when your Business Income coverage ends for this Additional Coverage.

**b. Alterations and New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred. This change in the start of the "period of restoration" does not apply to Extra Expense.

**c. Extended Business Income**

(1) Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) Unless otherwise stated in the Declarations or by endorsement, 30 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** Unless otherwise stated in the Declarations or by endorsement, 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of a Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

**d. Interruption of Computer Operations**

We will pay for:

**(1)** The actual loss of Business Income you sustain due to the "suspension" of your "operations" during the "period of restoration" and Extended Business Income; and

**(2)** The reasonable and necessary Extra Expense you incur during the "period of restoration" and Extended Business Income;

caused by direct physical loss or damage to "Electronic Data Processing Data and Media" at the described premises by a Covered Cause of Loss.

The most we will pay under this Additional Coverage is $25,000 for the sum of all covered interruptions arising out of all Covered Causes of Loss occurring during each separate 12 month period of this policy beginning with the effective date of this policy. The amount payable under this Additional Coverage is in addition to the Limit of Insurance.

**e. Delayed Net Income Loss**

We will pay for the actual loss of Net Income (Net Profit or Loss before income taxes) you sustain due to the "suspension" of your "operations" resulting in a loss in the value of production which occurs beyond the "period of restoration" and Extended Business Income. We will only pay under this Additional Coverage if:

**(1)** The Delayed Net Income Loss is caused by direct physical loss or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations;

**(2)** The loss or damage is caused by a Covered Cause of Loss;

**(3)** You incur the Delayed Net Income Loss within 24 months of the date of the direct physical loss or damage to the property; and

**(4)** You notify us in writing of such Delayed Net Income Loss within 24 months of the direct physical loss or damage to the property.

**4. Coverage Extensions**

Each of these Coverage Extensions is additional insurance. Unless otherwise indicated in the Declarations or by endorsement, the following Coverage Extensions apply:

**a. Newly Acquired Locations**

COMMERCIAL PROPERTY

(1) You may extend your Business Income and Extra Expense coverages to apply to property (including property under construction) at any location you newly acquire by purchase or lease (other than fairs, trade shows or exhibitions).

(2) The most we will pay under this Extension for the sum of Business Income loss and Extra Expense incurred at each newly acquired location is:

(a) $250,000 in any one occurrence; or

(b) If a fraction is shown in the Declarations for Monthly Period of Indemnity, the most we will pay for loss in each period of 30 consecutive days is the fraction shown in the Declarations times $250,000; or

(c) If Maximum Period of Indemnity is shown in the Declarations, the most we will pay is the amount of loss sustained during the 120 days immediately following the beginning of the "period of restoration", or $250,000, whichever is less.

(3) Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(a) This policy expires;

(b) 90 days expire after you acquire or begin to construct the property;

(c) You report the location to us; or

(d) Coverage for Business Income and Extra Expense at the location is more specifically insured.

We will charge you additional premium for values reported from the date you acquire the location.

b. **Claim Data Expense**

You may extend the insurance provided by this Coverage Form to apply to the expense you incur in preparing claim data when we require it. This includes the cost of preparing Income statements and other documentation to show the extent of Business Income loss. The most we

will pay for preparation of claim data under this Extension in any one occurrence is $2,500. We will not pay for:

(1) Any expenses incurred, directed or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries;

(2) Any costs as provided in the Loss Condition – Appraisal; or

(3) Any expenses incurred, directed, or billed by or payable to insurance brokers or agents, or their associates or subsidiaries, without our written consent prior to such expenses being incurred.

The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. COVERED CAUSES OF LOSS, EXCLUSIONS AND LIMITATIONS**

1. See applicable Causes of Loss Form as shown in the Declarations.

2. **Additional Limitation – Interruption of Computer Operations**

a. Coverage for Business Income does not apply to any loss or increase in loss caused by direct physical loss or damage to "Electronic Data Processing Data and Media", except as provided under the Additional Coverage - Interruption of Computer Operations.

b. Coverage for Extra Expense does not apply to any loss or increase in loss caused by direct physical loss or damage to "Electronic Data Processing Data and Media", except as provided under the Additional Coverage – Interruption of Computer Operations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations, this Coverage Form or any endorsements applicable to this Coverage Form.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for

an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis,

and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation and settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage occurred, but not including any likely increase in Net Income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, to the extent insured, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

COMMERCIAL PROPERTY

**b.** The amount of Extra Expense will be determined based on:

**(1)** All reasonable and necessary expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

**a.** You have complied with all of the terms of this Coverage Part; and

**b.** We have reached agreement with you on the amount of loss or an appraisal award has been made.

At our option, we may make a partial payment toward any claims, subject to the policy provisions and our normal adjustment process. To be considered for a partial claim payment, you must submit a partial sworn proof of loss with supporting documentation. Any applicable deductibles must be satisfied before any partial payments are made.

**E. ADDITIONAL CONDITION**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**a.** The Coinsurance percentage shown for Business Income in the Declarations; times

**b.** The sum of:

**(1)** The Net Income (Net Profit or Loss before income taxes), and

**(2)** All operating expenses (including payroll expenses),

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

**3.** Multiply the total amount of loss by the figure determined in step 2.

We will pay the amount determined in step 3, or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight – outgoing;

COMMERCIAL PROPERTY

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if form CP 15 11 is attached);

11. The amount of payroll expense excluded (when ordinary payroll is excluded or limited as stated in the Declarations); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion -- not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $150,000

The amount of loss is: $80,000

Step 1: $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000/$200,000 = .75

Step 3: $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous

anniversary date, of this policy at the described premises would have been: $400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $200,000

The amount of loss is: $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 X 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This Condition does not apply to Extra Expense coverage.

**F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income, including Extended Business Income and Delayed Net Income Loss Additional Coverages and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit of Insurance shown in the Declarations.

**2. Monthly Limit of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income including Extended Business Income and Delayed Net Income Loss Additional Coverages in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

COMMERCIAL PROPERTY

**Example:**

When: The Limit of Insurance
is:                              $120,000

The fraction shown in
the Declarations for
this Optional Cover-
age is:                          1/4

The most we will pay for loss in each pe-
riod of 30 consecutive days is:
$120,000 X 1/4 = $30,000

If, in this example, the actual amount of
loss is:

| | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | $20,000 |
| Days 61-90 | $30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | $20,000 |
| Days 61-90 | $30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

a. To activate this Optional Coverage:

(1) A signed Business Income Work-
sheet must be submitted to and ac-
cepted by us. The Worksheet must
show financial data for your "opera-
tions":

(a) For the most recent 12 months
prior to the date of the Work-
sheet; and

(b) Estimated for the 12 months im-
mediately following the inception
of this Optional Coverage.

(2) The Declarations must indicate that
the Business Income Agreed Value
Optional Coverage applies, and an
Agreed Value must be shown on the
Business Income Worksheet on file
with us. The Agreed Value should be
at least equal to:

(a) The Coinsurance percentage
shown in the Declarations; multi-
plied by

(b) The amount of Net Income and
operating expenses for the fol-

lowing 12 months you state on
the Worksheet.

b. The Additional Condition, Coinsurance, is
suspended until:

(1) 12 months after the effective date of
this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condi-
tion, Coinsurance, automatically if you do
not submit a new Worksheet and Agreed
Value:

(1) Within 12 months of the effective
date of this Optional Coverage; or

(2) When you request a change in your
Business Income Limit of Insurance.

4. **Ordinary Payroll Limitation or Exclusion**

a. To activate this Optional Coverage indi-
cate the following in the Declarations:

(1) Ordinary payroll is excluded; or

(2) Ordinary payroll is limited to a speci-
fied number of days. The number of
days may be used in two separate
periods during the "period of restora-
tion".

b. When ordinary payroll is excluded or lim-
ited:

(1) In determining the operating ex-
penses for the policy year for Coin-
surance purposes, payroll expenses
will not include ordinary payroll ex-
cept for ordinary payroll incurred
during the number of days shown in
the Declarations. If the ordinary pay-
roll for the policy year varies during
the year, the period of greatest ordi-
nary payroll will be used.

(2) Ordinary payroll means payroll ex-
penses for all your employees ex-
cept:

(a) Officers;

(b) Executives;

(c) Department managers;

(d) Employees under contract; and

(e) Additional Exemptions, shown in
the Declarations or by endorse-
ment as:

(i) Job Classifications; or

(ii) Employees specifically listed by name.

(3) Ordinary payroll includes:

(a) Payroll;

(b) Employee benefits, if directly related to payroll;

(c) FICA and Medicare payments;

(d) Union dues; and

(e) Worker's compensation premiums.

## G. DEFINITIONS

1. "Electronic Data Processing Data and Media" means:

   a. Data stored as or on, created or used on, or transmitted to or from computer software (including systems and application software) on electronic data processing, recording or storage media such as hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment;

   b. The electronic media on which the data is stored; and

   c. Programming records and instructions used for "Electronic Data Processing Equipment".

2. "Electronic Data Processing Equipment" means any of the following equipment used in your data processing operations:

   a. Electronic data processing equipment, facsimile machines, word processors, multi-functional telephone equipment and laptop and portable computers; and

   b. Any component parts and peripherals of such equipment, including related surge protection devices.

   "Electronic Data Processing Equipment" does not include equipment used to operate production type machinery or equipment.

3. "Finished Stock" means stock you have manufactured.

   "Finished Stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

4. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

5. "Period of Restoration" means the period of time after direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises which:

   a. Begins:

      (1) Unless a different time period is indicated in the Declarations, 72 hours after the time of direct physical loss or damage for Business Income coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

   (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

   (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

6. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead). Waste includes mate-

COMMERCIAL PROPERTY

rials to be recycled, reconditioned or re-claimed.

7. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

     (1) Payroll; and

     (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

8. "Suspension" means:

   a. The partial or complete cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**CP T1 04 01 03**

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F – DEFINITIONS.**

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section **B.,** Exclusions; or

2. Limited in Section **C.,** Limitations;

that follow.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance or Law**

   The enforcement of any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance or Law, applies whether the loss results from:

   **(1)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

   all whether naturally occurring or due to man-made or other artificial causes.

   But if Earth Movement, as described in **b. (1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   **c. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to

prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure or fluctuation of power or other utility service supplied to the described premises, however caused, if the failure or fluctuation occurs away from the described premises.

But if the failure or fluctuation of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to Business Income Coverage or Extra Expense Coverage. Instead, the Special Exclusion in paragraph **B.4.a.(1)** applies to these coverages.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water or sewage that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings;

all whether naturally occurring or due to man-made or other artificial causes.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, equipment, appliances or wires. But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** (1) Wear and tear;

(2) Rust, other corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator colli-

sion, we will pay for the loss or damage caused by that elevator collision;

(7) The following causes of loss to personal property:

    (a) Dampness or dryness of atmosphere;

    (b) Changes in or extremes of temperature;

    (c) Marring or scratching;

    (d) Changes in flavor, color, texture or finish;

    (e) Evaporation or leakage; or

(8) Contamination by other than "pollutants".

But if an excluded cause of loss that is listed in 2.d.(1) through (8) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    (1) You do your best to maintain heat in the building or structure; or

    (2) You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    (1) Acting alone or in collusion with others; or

    (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property.

**j.** Rain, snow, sand, dust, ice or sleet to personal property in the open.

**k.** Collapse, except as provided below in the Additional Coverage – Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified cause of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

**m.** The cost of correcting or making good the damage to personal property attributable to such property being processed, manufactured, tested, repaired, restored, retouched or otherwise being worked upon.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** and **3.b.** results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **B.1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

   of part or all of any property on or off the described premises.

   If an excluded cause of loss that is listed in **3.c.** above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:

   (1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or

   (2) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms and/or coverages when they are part of this policy.

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

   We will not pay for:

   (1) Any loss caused directly or indirectly by the failure or fluctuation of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

   But if the failure or fluctuation of power or other utility service results in loss or damage by a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   (2) Any loss caused by or resulting from:

   (a) Damage or destruction of "finished stock"; or

   (b) The time required to reproduce "finished stock".

   This exclusion does not apply to Extra Expense.

   (3) Any loss caused by or resulting from direct physical loss of or damage to the following property while outside of buildings:

   (a) Harvested grain, hay, straw or other crops;

   (b) Outdoor trees, shrubs, plants, lawns (including fairways, greens and tees), growing crops, land or water; and

   (c) Radio or television antennas, (including microwave or satellite dishes) and their lead-in wiring, masts or towers.

   (4) Any increase of loss caused by or resulting from:

   (a) Delay in rebuilding, repairing or replacing the property or resuming "operations" due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage, or any variation of these.

**(5)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(6)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

The following applies to this Coverage Form:

**(1)** Exclusion **B.1.a.,** Ordinance or Law, does not apply; and

**(2)** We will not pay for any loss caused by:

    **(a)** Your cancelling the lease;

    **(b)** The suspension, lapse or cancellation of any license; or

    **(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

    **(a)** Paragraph **B.1.a.,** Ordinance or Law;

    **(b)** Paragraph **B.1.c.,** Governmental Action;

    **(c)** Paragraph **B.1.d.,** Nuclear Hazard;

    **(d)** Paragraph **B.1.e.,** Utility Services; and

    **(e)** Paragraph **B.1.f.** War and Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

    **(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

    **(i)** Your assumption of liability was executed prior to the accident; and

    **(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**d. Electronic Data Processing Equipment; Electronic Data Processing Data and Media; Valuable Papers and Records and Accounts Receivable Coverages**

**(1)** Exclusions:

    **(a) B. 2. a.,** which excludes loss caused by or resulting from artificially generated electrical current that disturbs electrical devices, equipment, appliances or wires; and

    **(b) B. 2.c.,** which excludes loss caused by or resulting from smoke, vapor, or gas from agricultural smudging or industrial operations;

do not apply to loss or damage to "Electronic Data Processing Equipment", "Electronic Data Processing Data and Media" and "Valuable Papers and Records"; or to loss of Business Income and Extra Expense that is a consequence of such loss or damage.

**(2)** With respect to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media":

    **(a) Exclusion B.2.d.(6),** which excludes loss caused by or resulting from mechanical breakdown, including rupture or bursting of pipes, does not apply. The remainder of the **B.2.d.** exclusion continues to apply, but if a cause of loss listed in **B.2.d.(1)** through **(5)** and **B.2.d.(7)** results in mechanical breakdown of "Elec-

tronic Data Processing Equipment" or in any of the "specified cause of loss", we will pay for the resulting loss or damage.

**(b)** The following exclusion is added:

We will not pay for loss or damage to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media"; or loss of Business Income or Extra Expense, that is a consequence of loss or damage to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media"; caused by or resulting from any of the following:

**(i)** Programming errors, omissions or incorrect instructions to a machine. But if programming errors, omissions or incorrect instructions to a machine results in a "specified cause of loss" or mechanical breakdown of "Electronic Data Processing Equipment", we will pay for the resulting loss or damage;

**(ii)** Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as theft;

**(iii)** Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including electronic data). But if errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including electronic data) results in a

"specified cause of loss" or mechanical breakdown of "Electronic Data Processing Equipment", we will pay for the resulting loss or damage; or

**(iv)** Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including electronic data and the inability to access or properly manipulate the electronic data.

**(c)** The second paragraph of the Utility Services Exclusion, **B.1.e.,** and the Special Exclusion applicable to Business Income or Extra Expense coverage, **B.4.a.(1),** are deleted and replaced by the following:

But if the failure or fluctuation of power or other utility service results in a Covered Cause of Loss (other than mechanical breakdown of "Electronic Data Processing Equipment" or loss or damage from artificially generated electrical current which disturbs electrical devices, equipment, appliances or wires), we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

**(3)** With respect to Accounts Receivable coverage, we will not pay for:

**(a)** Loss caused by or resulting from bookkeeping, accounting or billing errors or omissions;

**(b)** Loss that requires an audit of records or any inventory computation to prove its factual existence; or

**(c)** Loss caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property. But this exclusion applies only to the extent of the wrongful giving, taking or withholding.

**CP T1 08 01 03**

(4) With respect to "Valuable Papers and Records" coverage, we will not pay for any loss or damage caused by or resulting from:

(a) Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as theft; or

(b) Errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for the resulting loss or damage caused by that fire or explosion.

## C. LIMITATIONS

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The "interior of any building or structure", or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income coverage or Extra Expense coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by a "specified cause of loss" or building glass breakage:

   a. Live animals, birds, or fish and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools, and equipment owned by you or entrusted to you, provided such property is Covered Property. However, this limitation does not apply:

      (1) If the property is located on or within 1,000 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or

damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $5,000 for furs, fur garments and garments trimmed with fur.

b. $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $25,000 for patterns, dies, molds and forms.

d. $1,000 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.3., does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

5. If the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs:

a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Discharge or leakage of water;

(5) Theft; or

(6) Attempted theft.

b. With respect to Covered Causes of Loss other than those listed in 5.a.(1) through 5.a.(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

D. ADDITIONAL COVERAGE – COLLAPSE

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1., through D.5. below.

1. With respect to buildings, collapse means:

a. An abrupt falling down or caving in of a building or any portion of a building with the result that the building or portion of the building cannot be occupied for its intended purpose; or

b. A building or any portion of a building that has not abruptly fallen down or caved in, but is in imminent danger of abruptly falling down or caving in, or has suffered a substantial impairment of structural integrity.

A building that is standing or any portion of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion unless the building is in imminent danger of abruptly falling down or caving in or has suffered a substantial impairment of structural integrity.

2. a. We will pay for direct physical loss or damage to Covered Property, caused by the collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the building or any portion of the building is in a state of collapse (as defined in 1.a. and b. above) and the state of collapse is caused by:

(1) A "specified cause of loss" or breakage of building glass;

(2) Weight of people or personal property; or

(3) Weight of rain that collects on a roof; and

b. When a building or any portion of a building has abruptly fallen down or

caved in and can no longer be occupied for its intended purpose, we will also pay for any direct physical loss or damage to Covered Property caused by:

(1) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(2) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse; or

(3) Use of defective material or methods in construction, remodeling or renovation if the building abruptly falls down or caves in during the course of the building, remodeling or renovation. However, if the abrupt falling down or caving in of the building occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **D.2.a., D.2.b. (1)** and **D.2.b.(2)** above, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the abrupt falling down or caving in.

3. With respect to the following property:

   a. Outdoor radio or television antennas (including microwave or satellite dishes) and their lead-in wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

   d. Outdoor swimming pools;

   e. Fences;

   f. Piers, pilings, wharves, docks, dikes or dams;

   g. Beach or diving platforms or appurtenances;

   h. Retaining walls; and

   i. Walks, roadways and other paved surfaces;

   if the collapse is caused by a cause of loss listed in **D. 2.a.(2), D.2.a.(3),** and **D.2.b.(1)** through **D.2.b.(3)** above, we will pay for loss or damage to that property only if:

   a. Such loss or damage is a direct result of an abrupt falling down or caving in of a covered building or any portion of a cov-

ered building insured under this Coverage Form; and

   b. The property listed in **3. a.** through **3. i.** above is Covered Property under this Coverage Part.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse was caused by a Cause of Loss listed in **D. 2. a.** and **D. 2. b.** above;

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

   Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage - Collapse does not increase the Limits of Insurance provided in this Coverage Part.

## E. ADDITIONAL COVERAGE EXTENSIONS

1. **Water Damage, Other Liquids, Powder or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

   This Coverage Extension does not increase the Limit of Insurance.

2. **Glass**

   In the event of loss or damage to covered glass under this Coverage Part:

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed; and

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension does not increase the Limit of Insurance.

## F. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building material. (Including but not limited to asbestos and lead products or materials containing lead.) Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Specified Cause of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse (as defined below); volcanic action; falling objects (as limited below); weight of snow, ice or sleet; water damage (as defined below), all only as otherwise insured against in this Coverage Part.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:
      
      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into manmade underground cavities.

   b. Falling objects does not include loss or damage to:

      (1) Personal property in the open; or

      (2) The "interior of a building or structure", or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object. Any portion of a building or structure that is within the exterior-facing surface material of a building or struc-

ture shall constitute the interior of that building or structure.

   c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) that is located on the described premises and contains water or steam.

When the Causes of Loss – Earthquake endorsement, Causes of Loss – Earthquake Sprinkler Leakage endorsement, or Causes of Loss – Broad Form Flood endorsement is included in this policy, "specified cause of loss" also includes such cause of loss, but only to the extent such cause of loss is insured against under this Coverage Part.

3. "Vacant" means:

   a. When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   b. When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

      (1) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

      (2) Used by the building owner to conduct customary operations.

   c. Buildings under construction or renovation are not considered vacant.

4. "Interior of any building or structure" means all portions of a building or structure that are within the exterior facing surface material of the building or structure.

**CP T1 08 01 03**

# EXHIBIT B



The Travelers Indemnity Company Of America
PO Box 1900
Morristown, NJ 07962-1900

07/20/2016

**G&P Parlamas Inc.**
**1928 Heck Ave**
**Neptune NJ 07753-4429**

| | |
|---|---|
| **Insured:** | G & P Parlamas Inc. |
| **Claim Number:** | E4R1470 |
| **Policy Number:** | QTH660-6G039980 |
| **Date of Loss:** | 06/17/2016 |
| **Loss Location:** | 1928 Heck Ave Neptune NJ |

Dear Mr. Parlamas,

I am following up on our recent conversation about your claim. As we discussed, after researching this claim, The Travelers Indemnity Company Of America determined that your policy does not cover settlement damages. The reasons for this determination are outlined below.

You presented a claim for windstorm damage to an architectural mount on the right front corner of the building. We inspected the damages with you and followed with an engineer's inspection on 06/21/2016. Our research found the movement of the mount had occurred from settlement over an several years. Since settlement is specifically excluded, your policy does not provide coverage.

As a reference, I have provided the following section of your policy, (Commercial Property Special Causes of Loss Coverage Form CPT108(01/03)), which explains that this type of loss is excluded:

A. COVERED CAUSES OF LOSS
   When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
   1. Excluded in Section B., Exclusions; or
   2. Limited in Section C., Limitations;
   that follow.

B. EXCLUSIONS
   \*\*\*\*
   2. We will not pay for loss or damage caused by or resulting from any of the following
      d. (1) Wear and tear;
         (2) Rust, other corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
         \*\*\*\*
         (4) Settling, cracking, shrinking or expansion;
   3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. and 3.b. results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.
      \*\*\*\*

P0397

c. Faulty, inadequate or defective:
  (1) Planning, zoning, development, surveying, siting;
  (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  (3) Materials used in repair, construction, renovation or remodeling; or
  (4) Maintenance;
  of part or all of any property on or off the described premises.
  If an excluded cause of loss that is listed in 3.c. above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:
  (1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or
  (2) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.

This decision is based on the information and documentation we received during our research of this claim. If you are aware of any new or different information or documentation that might lead us to reconsider our decision, please contact me immediately.

Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or at law.

I regret that a more favorable outcome could not have occurred and I have attached a copy of the engineer's report for your records.

Please review the Action Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action.

If you have any questions, please contact me at (973)534-5170 or LKORTE@travelers.com.

Sincerely,

Louis G Korte Jr
Claim Professional
Direct: (973)534-5170
Office: (800)842-2475 Ext. 534-5170
Fax: (877)786-5568
Email: LKORTE@travelers.com


CC: Global Indemnity Insurance

NOTICE
CLAIMS INTERNAL APPEAL PROCEDURE

THE FOLLOWING APPEAL PROCEDURE IS AVAILABLE FOR ALL CLAIMS
EXCEPT
AUTOMOBILE INSURANCE PERSONAL INJURY CLAIMS

New Jersey law and regulation provides claimants with the right to appeal disputed insurance claims when the "final" offered claim settlement remains unacceptable to the claimant. A disputed insurance claim is any offer of settlement made by this company which is, in whole or in part, rejected or refused by the claimant.

In the event that you wish to appeal a disputed claim, you must submit a written request to the company at the address shown below. All appeals will be rendered within 10 business days from receipt of the appeal provided that no additional information is required of the panel, and a final written determination will be mailed to you no later than 3 business days after the final determination is made.

Internal appeals must be sent by United States Postal Service, via facsimile transmission or delivered personally to the following address to ensure prompt and accurate handling:

Travelers
Attn: Internal Appeals Panel
PO Box 1900
Morristown, NJ 07962
Fax: (888) 256-3308

Your request must include the basis by which you believe the final offered claim settlement is unacceptable and include all supporting documentation you would like reviewed by the company's Internal Appeals Panel prior to rendering their determination.

After the hearing, if you are not satisfied with the final determination rendered by the Internal Appeals Panel, you may then appeal the decision to the Office of the Insurance Claims Ombudsman at the address below:

Office of the Insurance Claims Ombudsman
Department of Banking and Insurance
PO Box 472
Trenton, New Jersey 08625-0472
Telephone: (800) 446-7467
Telefax: (609) 292-2431
E-Mail: Ombudsman@dobi.state.nj.us

NJCLMIAP 2/11

# J. Guider & Associates, P.C.
### Consulting Engineers and Designers



## A REPORT
## OF THE

### Damaged Architectural Mount
### Reportedly due to Wind



102? ... k Ave.
... NJ

Insured ...

Claim # ...

Prepared for:

Mr. ... 
Travelers ...
P.O. Box 1900
Morristown, NJ 07960

July 15, 2016

364 Parsippany Road ≻ Unit 10B ≻ Parsippany, NJ 07054          Telephone 973-428-1101 ≻ Fax 973-428-1308

*Environmental  ≻  Civil/Structural  ≻  Forensic*



# J. Guider & Associates, P.C.
### Consulting Engineers
### and Designers

July 15, 2016

Mr. Lou Korte
Travelers Insurance
P.O. Box 1900
Morristown, NJ

*via e-mail only*

Re:  Insured: G & P Parlamas, Inc.
     Loss Location: 1928 Heck Ave., Neptune, NJ
     Claim #: E4R-1470
     Damaged Architectural Mount Reportedly due to Wind

Dear Mr. Korte:

As requested, James Guider P.E. of J. Guider & Associates, P.C., conducted a site visit at the above referenced property on June 27, 2016. The purpose of this site visit was to evaluate and determine the cause(s) of the damaged architectural mount located at the above referenced location. Present during our site visit were Mr. Mark Parlamas, the insured and Mr. James Schlaffer of the Recon Group.

Mr. Parlamas indicated that the subject building was constructed in 1966. He has owned the building since 2001. He further indicated that the roof covering was installed approximately 10 years ago. He observed movement and cracking of the architectural mount and attributed this concern to high wind forces.

For the purpose of this report, the front of the subject building faces east (parking area), with Heck Avenue located at the north side of the building. The subject site has been improved with a one-story building with a brick facade. The subject architectural mount is located at the north end of the east side of the building.

The subject architectural mount is approximately 6' wide and 1'7" deep with its widest section placed in a north-south orientation. It is approximately 27'6" in overall height with approximately 12'0" extending above the building roofline (Photos 1 & 2).

364 Parsippany Road ≻ Unit 10B ≻ Parsippany, NJ 07054    Telephone 973-428-1101 ≻ Fax 973-428-1308
*Environmental ≻ Civil/Structural ≻ Forensic*

Insured: G & P Parlamas, Inc.                                    Travelers Insurance
Loss Location: 1928 Heck Ave., Neptune, NJ                       Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind               July 15, 2016

Although not confirmed the architectural mount appears to have been constructed with 8"
thick concrete blocks surrounded by standard 8" architectural bricks. The concrete block core
could not be confirmed without conducting destructive testing. This lack of information does
not affect the findings or conclusions of this report.

A six-inch diameter PVC drainpipe was observed at the south end of the architectural mount.
This pipe directs rooftop rainwater away from the building. This pipe appears to have been
recently installed within the past several years. It appears that rooftop rainwater may have
been discharged more closely to the building (Photos 3 & 4).

Just south of the architectural mount there is a section of building exterior wall that exhibits
settlement cracks. These cracks coincide with the location of the drainage pipe discharge
(Photos 5 & 6).

There is an open joint approximately 1.25" wide at the interface of the architectural mount
with the building's north exterior wall. This joint was sealed sometime in the past with caulk.
The caulk has dried out, shrunk, and split. However, the width of the joint, for the most part
is consistent from grade level to roof level. This joint appears to have been part of the
original construction. This is an indication that the architectural mount has not moved or
rotated towards the east. This would be the most likely direction of movement, if the
architectural mount were moved by wind forces as the east face is the widest (6') as opposed
to the north face (1'7") (Photos 7 to 10).

Observations of the architectural mount as seen from the east, looking west revealed that the
architectural mount was approximately 3" out of plumb (Photos 11 to 14, 17, & 21). The
upper section of wall has moved and rotated to the north. This is not consistent with
anticipated wind damage as the north and south sides of the architectural mount are only 1'7"
wide. However, this movement is consistent with the settlement cracks observed in the west
wall discussed above (Photos 5 & 6).

The architectural mount was observed from the roof level. The roof was accessed by ladder
supplied by the insured. The roof extends up and over the parapet wall and is mechanically
fastened to the architectural mount. The roofing material has not pulled away and has not
become detached from the architectural mount. However, wrinkles in the roofing material
indicate that there is movement to the north of the architectural mount and roofing material
(Photos 16 & 18).

The architectural mount as observed from the south end of the roof does not exhibit any
movement or rotation to the west (Photo 15).

J. Guider & Associates, P.C.                                     page 2 of 3

Insured: G & P Parlamas, Inc.                                    Travelers Insurance
Loss Location: 1928 Heck Ave., Neptune, NJ                      Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind              July 15, 2016

There is a sign located on the east end of the architectural mount that was attached with bolts.
This sign was not placed level with the horizontal mortar joints of the bricks. This is an
indication of settlement to the north of the architectural mount taking place prior to the
installation of the sign. This movement is not as severe as the movement presently observed,
however it is an indication of past and potentially ongoing movement at a slow rate since the
installation of the sign (Photo 19).

Numerous holes were observed in the face of the architectural mount (Photo 20). This is an
avenue for water infiltration into the wall cavity. This is a potential cause for the cracks
observed at several locations throughout the architectural mount (Photos 23 & 24). In
addition, there is a concrete cap located at the top of the architectural mount (Photo 19) that
exhibits patched joints. Again, this is an avenue for water infiltration. These cracks are in
addition to the settlement cracks observed in architectural mount (Photo 22).

The northwest corner office was observed for damages and/or movement. No indications of
any cracked damaged or displaced drywall was noted (Photos 25 & 26).

Based on our experience and engineering analysis of the evidence available, within a
reasonable degree of engineering certainty, it is the opinion of this organization that the
subject movement of the architectural mount is due to settlement taking place over an
extended period of time in excess of several years. Although not confirmed, the settlement
was further exacerbated by the roof drainpipe that may have discharge closer to the wall then
at the present time. An undersized footing may have also contributed to the excessive
settlement.

There were no indications of any sudden or one time occurrence to have caused any of these
concerns. As new information becomes available, we reserve the right to amend this report.

We hope that this submission is sufficiently complete. If you have any questions, feel free to
call.

Sincerely,

James Guider, P.E.

J. Guider & Associates, P.C.
By:     James Guider, P.E.
        NJPE # 32411
enc.

J. Guider & Associates, P.C.                                           page 3 of 3

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #:  B4R-1470
July 15, 2016

# PHOTOGRAPHS
# by
# JG&A

J. Guider & Associates, P.C.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 1:  Overall view looking east at the subject architectural mount (elevated wall).



Photo 2:  View looking northeast at the subject architectural mount.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 3: View looking northeast at subject architectural mount (grade level). Note drainage pipes.



Photo 4: View looking east at the lower section of the subject architectural mount. Note location of drainpipe.

J. Guider & Associates, P.C.

Photo Page 2 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 5: View looking east at the subject architectural mount and adjacent wall (right side of photo). Note step-down settlement crack in adjacent wall.



Photo 6: Up-close view of Photo 5.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 7:  View looking south at the upper section of the subject architectural mount and building
wall interface.  Note opening between two walls is relatively uniform throughout the entire
height of the wall.  This is an indication that the wall has not moved substantially to the west.



Photo 8:  View looking upward at interface discussed in Photo 7.  Note uniform movement in
east-west direction.

J. Guider & Associates, P.C.

Photo Page 4 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 9:  Up-close view of Photo 7 (upper).  Note long-term deterioration of caulk in joint indicating that this opening has existed for a long period of time in excess of several years.



Photo 10:  Up-close view of Photo 7 (lower section of wall).

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #:  B4R-1470
July 15, 2016



Photo 11:  View looking west at the subject architectural mount.  Note movement to the north.
Also note, upper section of wall extends further beyond building north wall indicating rotation
or settlement to the north.



Photo 12:  Another view similar to Photo 11.

J. Guider & Associates, P.C.

Photo Page 6 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: B4R-1470
July 15, 2016



Photo 13:  Another view of Photo 11 (upper).



Photo 14:  Another view of Photo 11 (lower).

J. Guider & Associates, P.C.

Photo Page 7 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #:  E4R-1470
July 15, 2016



Photo 15:  View looking north at the subject architectural mount.  Only minor movement to the east, which would be the anticipated direction of movement if caused by wind.



Photo 16:  Overall view looking northwest at the subject architectural mount as seen from the roof level.

J. Guider & Associates, P.C.

Photo Page 8 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: B4R-1470
July 15, 2016



Photo 17: View looking west at the subject architectural mount as seen from the roof. Note lean to the north.



Photo 18: View looking northwest at the interface of the subject architectural mount and roofing material. Note wrinkles indicating movement and rotation to the north.

J. Guider & Associates, P.C.

Photo Page 9 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016



Photo 19:  View of sign at east side of subject architectural mount.  Note sign was installed
level, but the wall was not level at that time of installation as evidenced by the mortar joints
not lining up with the sign.



Photo 20:  View of numerous holes in subject architectural mount that are an avenue for
water infiltration.

J. Guider & Associates, P.C.

Photo Page 10 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #:  E4R-1470
July 15, 2016



Photo 21:  View looking west at the subject architectural mount.  Note lean is to the north.



Photo 22:  Up-close view looking west at the subject architectural mount at roof level.  Note
settlement cracks (settlement is to the north).

J. Guider & Associates, P.C.

Photo Page 11 of 13

Insured: G & P Parlamas, Inc.                                    Travelers Insurance
Loss Location: 1928 Heck Ave., Neptune, NJ                      Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind                 July 15, 2016



Photo 23:  Up-close view of a typical crack.  Note patina within the crack is similar to
exposed face indicating opening was not recently formed.



Photo 24:  View of shrinkage and expansion cracks along the south face of the subject architectural
mount at roof level.  It appears that there is an 8" concrete block wall within the brick
architectural mount.  This material will expand and contract at different rates than the brick.

J. Guider & Associates, P.C.                                   Photo Page 12 of 13

Insured: G & P Parlamas, Inc.                                    Travelers Insurance
Loss Location: 1928 Heck Ave., Neptune, NJ                      Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind              July 15, 2016



Photo 25:  View of interior wall at area of concern (northwest corner).  No cracks or movement
noted.  This is an indication that the settlement occurred before the walls were painted and
potentially spackled.



Photo 26:  View of west interior wall at area of concern.  No cracks or movement noted.

J. Guider & Associates, P.C.                                    Photo Page 13 of 13

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Damaged Architectural Mount Reportedly due to Wind

Travelers Insurance
Claim #: E4R-1470
July 15, 2016

# LAST PAGE

# OF THIS

# REPORT

J. Guider & Associates, P.C.

# EXHIBIT C



**G & P Parlamas, Inc.**
GENERAL CONTRACTORS

1928 Heck Ave, Neptune NJ 07753

Tel: (732) 776-8844
Fax: (732) 776-8850

August 29, 2016

Travelers
Attn: Internal Appeals Panel
P.O. Box 1900
Morristown, New Jersey 07962
Fax: (888) 256-3308

Insured: G & P Parlamas Inc.
Claim Number: E4R1470
Policy Number: QTH660-6G039980
Date of Loss: 06/17/2016
Loss Location: 1928 Heck Ave Neptune NJ

Traveler's Internal Appeals Panel,

This letter serves as a formal request for a review of Traverler's claim denial letter issued on 7/20/2016. Our firm hired an independent structural engineering firm to provide a structural assessment of the claimed damage (See attached KSI Professional Engineers's report dated August 29, 2016).

This report is the basis by which we believe the final offered claim settlement is unacceptable and is hereby presented as the supporting documentation we would like reviewed by Traveler's Internal Appeals Panel prior to rendering their determination.

Thank you for your consideration.

Sincerely

Markos Parlamas
Vice President Operations
G & P Parlamas Inc.

cc: Louis G Korte Jr
Claim Professional
Direct: (973)534-5170
Office: (800)842-2475 Ext. 534-5170
Fax: (877)786-5568
Email: LKORTE@travelers.com

ENGINEERING LETTER



August 29, 2016

Mr. Markos Parlamas
G & P Parlamas, Inc
1928 Heck Avenue
Neptune, NJ

Re:   Structural Assessments of Front Sign Element
      At above listed address
      KSI Project Number: 1600-134

Dear Mr. Parlamas:

Pursuant to your request we performed a site visit to the above referenced building on Friday August 12, 2016 to review the existing structural condition of the front sign element and the recent shifting of the sign and subsequent cracking of the brick masonry adjacent to the sign. The building was a one story commercial building constructed approximately in 1966. It is our understanding the brick façade recently suffered some cracking damage at the northwest corner of the building which prompted this investigation.

We performed a site visit and met with Mr. Parlamas on site to review the conditions of the exterior wall sign element (See Photo A). Based on the movement we observed in the brick façade and the severity of the brick masonry cracks at the northwest corner and the significant separation observed at the masonry expansion joint we decided to excavate the foundation to inspect the condition of the footing. The entire length of the footing at the west face of the two story section of wall was exposed for review along with a portion of the north wall foundation (See Photo B).

The existing sign element measured approximately 25' above grade and extended below grade approximately 27inches for a total height of approximately 27'. The width of the sign was measured as 6'-0" and the thickness was nominally 17" or the equivalent of four wythes of brick with mortar joints. There was a brick expansion joint located at the north wall at the interface of the exterior brick wall and the sign element (See Photo C). The footing for the sign measured only 12" wide at the base which protruded from the face of the brick wall and the portion of the sign buried by soil was constructed using cinder block which is more susceptible to deterioration which can be seen in Photo B.

The brick façade to the south of the sign had significant and new stair step cracking which propagated from the head of the adjacent window and angled down the wall at an approximate 45 degree angle towards the foundation. The brick expansion joint noted above was observed to be narrow at the bottom and wide at the top which indicated movement of the sign element to the west. The brick façade cracking is also indicative of this same movement.

Page 2 of 4
8/29/2016
KSI Project Number: 1600_134



Photo A: Sign element at northwest corner



Photo B: Excavated footing.



Photo C: Top view of brick expansion joint



Photo D: Brick stair step cracks.

P.O. Box 628
Farmingdale, NJ 07727
Phone: 732.938.2666

6 S. Fullerton Ave, Suite 10
Montclair, NJ 07042
Phone: 973.577.7739

www.ksi-pc.com

In addition to the translation of the top of the sign element to the west which has induced a lean into this element it has also rotated/shifted slightly to the north. This movement was observed at the failed sealant at the expansion joint along the north wall and also mirrored in the gap of the failed brick masonry joints along the west facing wall (See Photo D).

The movement we observed in the sign element was recent based on the fact that the cracks in the brick masonry façade along the west facing wall were fresh and were significant cracks. There is no question this sign element has recently shifted significantly to the west and slightly to the north. The sign element did not appear to be positively connected to the roof diaphragm as evidenced by the stress and wrinkling of the roofing material where it was tied to the brick sign face (See Photo E and F). Had the sign element been tied into the roof diaphragm properly it would not be able to translate in the northerly direction and thus there would be no wrinkling of the roofing material.



Photo E:  Brick sign element at roof.            Photo F: Roof side of brick sign element

The foundation for the sign was excavated to determine if there was any indication of soil erosion from under the footing of the sign and to determine the condition of the footing for the sign. Based on the extensive hand excavation of the foundation we found no indication of an soil erosion or recent settlement at the footing level. Based on our experience a stable and sound building does not suddenly settle after fifty years unless there is some cause which is typically a water source. Based on the excavation of the foundation no active water source was found which would cause an erosion of the soil from under the footing. Also, the excavated soil was found to be in good condition with no signs of foreign fill material.

www.ksi-pe.com

6 S. Fullerton Ave, Suite 10
Montclair, NJ 07042
Phone: 973.577.7739

P.O. Box 628
Farmingdale, NJ 07727
Phone: 732.938.2665

Page 4 of 4
8/29/2016
KSI Project Number: 1600_134

Based on the geometry of the brick sign element and the existing footing size it is very possible a wind force cause the rotation of the brick sign wall. From our experience designing freestanding sign elements we have found the typical foundation for such a structure is far more significant than what was found under this brick sign element. This particular brick sign is helped by the fact that the sign is not completely freestanding but is more akin to a chimney than a freestanding sign. Yet it is subject to significant wind forces which could have led to the rotation of the sign. Also, the fact that the brick sign element has no positive connection to the north wall and is only connected to the roof by the roof membrane will result in a propensity to become overstressed by wind pressure. The sign was connected to the west wall but the recent cracking of this wall has further weakened the assembly.

We also noted the lower or buried courses of the brick sign element were constructed with cinder block which is subject to deterioration over time (see photo B). With this softer material at the base of the wall and the loss of face shell material this course may not provide the same support it once offered. As this face shell breaks down and the wall leans the cinder block may no longer be capable of supporting the load of the brick sign element which will act to exacerbate the condition and the lean of the wall.

EXECUTIVE SUMMARY:
Based on our observations and the photographs attached along with the excavation done on site the brick sign element located at the northwest corner of the building has shifted significantly to the west and slightly to the north. This shifting was not due to settlement of the soil as there was no subsoil erosion observed during the excavation and there was no water source found during excavation which would indicate a cause for the subsoil settlement.

The brick sign element was not positively connected to the main building beyond the connection of the roof membrane and north wall brick facade. This lack of connection at the roof and the failure of the north wall connection resulted in the brick sign element failing to resist wind forces typically seen by a freestanding sign or chimney. Therefore, under wind forces, the brick sign element has rotated to the west causing the gap observed in the brick expansion joint and the cracks observed in the north façade; and the brick sign element has also shifted to the north. We also observed a cinder block course at the base of the brick sign element which could contribute to the lean based on the decomposition of the face shell of the block and the compression of this element.

Based on the above observations it is our professional opinion the brick sign element in its current condition is in danger of a partial collapse in a design wind event. Since the entire segment of the wall is out of plumb the only reasonable means of repair is to remove the leaning portion of the wall completely down to grade and reconstruct the wall in accordance with the current code requirements to a plumb and stable condition.

Our observations and recommendation are based on the visual review of the exposed area of the building and our experience reviewing this type of construction. We offer no guarantee or warranty for any part of the existing building. If you have any question or need clarification, please do not hesitate to contact us.
Sincerely,
Kevin C. Sommons, PE
NJ Professional Engineer License Number GE41789

www.ksi-pe.com

6 S. Fullerton Ave, Suite 10
Montclair, NJ 07042
Phone: 973.577.7739

P.O. Box 628
Farmingdale, NJ 07727
Phone: 732.938.2666

# EXHIBIT D

 **TRAVELERS** ⌐

Internal Appeals Committee
P.O. Box 1900
Morristown, NJ 07962

September 6, 2016

G & P Parlamas, Inc.
1928 Heck Ave
Neptune, NJ 07753

Claim Number: E4R1470
Insured:  G & P Parlamas, Inc.
Date of Loss:    6/17/2016

Dear Mr. Parlamas,

Please accept this letter in response to your request for an appeal which we received on August 29, 2016.  We would like you to know the Claim Appeals Panel reviewed the appeal you submitted on the claim file E4R1470. It is our understanding that based on the new information submitted with your appeal from your structural engineering firm, that the file is being re-evaluated by the Claim Representative.

If you continue to be dissatisfied after the Claim Handler concludes their review and makes a final determination, please do not hesitate to contact me in writing with your request to reopen the appeal.  Thank you for your patience with this matter.

Very truly yours,

Troy Tice
Director of Operations
Ph: 973-631-3099
Fax: 877-786-5568
Email: TTICE@travelers.com

# EXHIBIT E

**TRAVELERS**                                    4863

The Travelers Indemnity Company Of America
PO Box 1900
Morristown, NJ 07962-1900

09/15/2016

G & P Parlamas Inc.
1928 Heck Ave
Neptune NJ 07753-4429

| | |
|---|---|
| **Insured:** | G & P Parlamas Inc. |
| **Claim Number:** | E4R1470 |
| **Policy Number:** | QTH660-6G039980 |
| **Date of Loss:** | 06/17/2016 |
| **Loss Location:** | 1928 Heck Ave Neptune NJ |

Dear Mr. Parlamas,

As outlined in a letter issued by the independent appeals panel on 9/9/16, our investigation was reactivated in order to review the new information that you submitted from KSI Professional Engineers.

We asked the independent engineering expert that was originally retained on our file to review the information as well. We have attached a copy of their response for your records.

Due to the findings of our expert we must remain firm in our prior decision that the situation with the involved building does not constitute covered damages from a covered cause of loss, as listed in our original declination of coverage letter dated 7/20/2016.

Sincerely,

Louis G Korte Jr
Claim Professional
Direct: (973)534-5170
Office: (800)842-2475 Ext. 534-5170
Fax: (877)786-5568
Email: LKORTE@travelers.com

CC: Global Indemnity Ins



The Travelers Indemnity Company Of America
PO Box 1900
Morristown, NJ 07962-1900

09/15/2016

**G & P Parlamas Inc.**
**1928 Heck Ave**
**Neptune NJ 07753-4429**

| | |
|---|---|
| **Insured:** | G & P Parlamas Inc. |
| **Claim Number:** | E4R1470 |
| **Policy Number:** | QTH660-6G039980 |
| **Date of Loss:** | 06/17/2016 |
| **Loss Location:** | 1928 Heck Ave Neptune NJ |

Dear Mr. Parlamas,

As outlined in a letter issued by the independent appeals panel on 9/9/16, our investigation was reactivated in order to review the new information that you submitted from KSI Professional Engineers.

We asked the independent engineering expert that was originally retained on our file to review the information as well. We have attached a copy of their response for your records.

Due to the findings of our expert we must remain firm in our prior decision that the situation with the involved building does not constitute covered damages from a covered cause of loss, as listed in our original declination of coverage letter dated 7/20/2016.

Sincerely,

Louis G Korte Jr
Claim Professional
Direct: (973)534-5170
Office: (800)842-2475 Ext. 534-5170
Fax: (877)786-5568
Email: LKORTE@travelers.com

CC: Global Indemnity Ins

FREEFORM

# J. Guider & Associates, P.C.
## Consulting Engineers and Designers



## Review of the KSI Report
## dated August 29, 2016



of the
Damaged Architectural Mount
Reportedly Due to Wind

Mr. Louis Nitti
Travelers Insurance
P.O. Box 1900
Morristown, NJ 07960

## September 14, 2016

364 Parsippany Road ➢ Unit 10B ➢ Parsippany, NJ 07054          Telephone 973-428-1101 ➢ Fax 973-428-1308

*Environmental  ➢  Civil/Structural  ➢  Forensic*

# J. Guider & Associates, P.C.
### Consulting Engineers
### and Designers

**JG&A**

September 14, 2016

Mr. Louis Korte
Travelers Insurance
P.O. Box 1900
Morristown, NJ

*via e-mail only*

Re:   Insured: G & P Parlamas, Inc. - Claim #: E4R-1470/DOL: June 17, 2016
       Loss Location: 1928 Heck Ave., Neptune, NJ
       Damaged Architectural Mount Reportedly due to Wind
       Review of KSI Report dated August 29, 2016

Dear Mr. Korte:

As requested, James Guider P.E. of J. Guider & Associates, P.C., reviewed the KSI Report
dated August 29, 2016 with regards to the reported wind damaged architectural mount at the
subject site. We offer the following comments:

The last sentence of Paragraph 3 of the KSI report states:

> *"The footing for the sign measured only 12" wide at the base which protruded from
> the face of the brick wall and the portion of the sign buried by soil was constructed
> using cinder block which is more susceptible to deterioration which can be seen in
> Photo B."*

KSI stated that a 12" wide footing at the base of the subject wall is inadequate. That
statement concludes the footing to the wall was improperly designed and/or constructed. That
is a reasonable conclusion. KSI further indicates that the wall was constructed with cinder
blocks, which are more susceptible to deterioration, which KSI observed. We concur with
KSI's assessment that cinder block is more susceptible to deterioration. Although we did not
see the exposed cinder blocks or footing, we would assume that his findings of deterioration

---

364 Parsippany Road ➢ Unit 10B ➢ Parsippany, NJ 07054        Telephone 973-428-1101 ➢ Fax 973-428-1308
*Environmental   ➢   Civil/Structural   ➢   Forensic*

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #:  E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

are accurate.  KSI has stated that there is a deterioration concern with the wall.  We concur
with this statement.

Paragraph 4 of the KSI report states:

> *The brick facade to the south of the sign had significant and new stair step*
> *cracking which propagated from the head of the adjacent window and angled*
> *down the wall at an approximate 45 degree angle towards the foundation.   The*
> *brick expansion joint noted above was observed to be narrow at the bottom and*
> *wide at the top which indicated movement of the sign element to the west.   The*
> *brick facade cracking is also indicative of this same movement.*

We concur with the portion of the statement as to the extent and location of the step crack.
However, we disagree that the crack was recently formed.  The surface appearance in the
cracks was similar to the face of the bricks and mortar indicating a weathering together of the
two faces has been taking place for an extended period of time.  In addition, there was no
indication of any rotation of this portion of the wall near the window to indicate movement
towards the west.  The step crack is an indication of settlement to the north.

We disagree with the second statement that the expansion joint crack at the north side of the
building is wider at the top than the bottom.  This difference in width of the joint was found to
be minimal.  Whereas, the movement of the wall to the north was significant.  Please refer to
Photos 9 through 14, 17, and 19 of our July 15, 2016 report that illustrates the significant
movement to the north and not the west.

Paragraph 5 of the KSI report states:

> *"In addition to the translation of the top of the sign element to the west which has*
> *induced a lean into this element it has also rotated/shifted slightly to the north.*
> *This movement was observed at the failed sealant at the expansion joint along the*
> *north wall and also mirrored in the gap of the failed brick masonry joints along the*
> *west facing wall (See Photo D)."*

We disagree completely with this paragraph.  The wall has not shifted significantly to the
west and slightly to the north.  Our findings are the complete opposite.  The excessive
movement and lean was to the north and only minor to the west.  Please refer to our
discussion of Paragraph 4 above for further confirmation by our photos.  In addition, failed
brick masonry joints of the west wall are due to settlement, not rotation.  Furthermore, these

J. Guider & Associates, P.C.

page 2 of 9

·Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

cracks were previously repaired as evidenced by the wider mortar joints and the difference in color of the west wall adjacent to the windows as compared to the 6' wide section of the architectural mount. See Photos 1 and 2 of this report

Paragraph 6 of the KSI report states:

> *The movement ·we observed in the sign element was recent based on the fact that the cracks in the brick masonry facade along the west facing wall were fresh and were significant cracks. There is no question this sign element has recently shifted significantly to the west and slightly to the north. The sign element did not appear to be positively connected to the roof diaphragm as evidenced by the stress and wrinkling of the roofing material where it was tied to the brick sign face (See Photo E and F). Had the sign element been tied into the roof diaphragm properly it would not be able to translate in the northerly direction and thus there would be no wrinkling of the roofing material.*

Each sentence of Paragraph 6 will be repeated and addressed:

> *The movement we observed in the sign element was recent based on the fact that the cracks in the brick masonry facade along the west facing wall were fresh and were significant cracks.*

As previously discussed, these cracks were not recently formed. In addition, there were several repairs to the mortar joints and possible replacement of bricks along the west wall (Photos 1 & 2). There appears to be an ongoing settlement concern at this location that will be discussed below.

> *There is no question this sign element has recently shifted significantly to the west and slightly to the north.*

As previously discussed, our conclusions are the opposite. We observed significant movement to the north and minor movement to the west.

> *The sign element did not appear to be positively connected to the roof diaphragm as evidenced by the stress and wrinkling of the roofing material where it was tied to the brick sign face (See Photo E and F). Had the sign element been tied into the roof diaphragm properly it would not be able to translate in the northerly direction and thus there would be no wrinkling of the roofing material.*

J. Guider & Associates, P.C.

page 3 of 9

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

We concur with this statement. Had the wall moved significantly to the west, there should be some movement and wrinkling of the roofing material on the southern side of the roof. During our site visit we did not observe any movement or wrinkling of the roofing material to indicate movement to the west. The wrinkling and movement of the roof indicates movement to the north. Please refer to Photos 3 & 4 of this report.

Paragraph 7 of the KSI report states:

> *The foundation for the sign was excavated to determine if there was any indication of soil erosion from under the footing of the sign and to determine the condition of the footing for the sign. Based on the extensive hand excavation of the foundation we found no indication of an soil erosion or recent settlement at the footing level. Based on our experience a stable and sound building does not suddenly settle after fifty years unless there is some cause which is typically a water source. Based on the excavation of the foundation no active water source was found which would cause an erosion of the soil from under the footing. Also, the excavated soil was found to be in good condition with no signs of foreign fill material.*

This office was not present during the excavation activities. The KSI report indicates that there was no soil erosion or recent settlement. Soil settlement can also compact the soil beneath the footing as the settlement occurs. The movement would have no indicators in the soil beneath the footing. There does not need to be erosion or foreign fill for settlement to occur. It is not evident that this settlement has taken place recently.

There were no discussions in the KSI report of the soil being probed or if the bottom of the footing was exposed to examine the soils beneath the footings. In addition, the report does not indicate if the excavation extended towards the south to evaluate the soil at the area of most severe cracking and movement in the wall mortar joints

New settlement oftentimes occurs after a building has been present for many years (fifty as in the subject building). Typically, this occurs after underground dry wells clog and a new water movement pattern occurs. Settlement or soil subsidence is a typical indicator of this concern.

The changing of the underground drainage system at the subject site is the most probable cause of the observed settlement of the subject wall. The roof drainage system consists of internal roof drains (Photos 5 & 6). These photos illustrate a double roof drain. This is a precautionary measure in case one drain clogs. Double drains were not installed at the time of

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

original construction of this building. It is our understanding that a new roof was installed approximately 10 years ago. We presume the double drains were installed at that time. In addition, the drainage discharge pipes were rerouted to the exterior of the building through the building walls (Photos 7 & 8). Based on our experience, this configuration of drainage was not part of the original design. Please refer to Photo 10 of this report. This is an aerial photo taken in 2007 of the subject roof. Double drains are not present. The discharge would have been to an underground drainage system or piping. Also, note in Photo 8, the drainage pipe discharges to an area of grass that is at a higher elevation than the area near the building. This would cause water to accumulate against the foundation wall. This could have then caused settlement of the soil below the footing, which resulted in the observed cracks. Since the installation of these pipes, the subsurface water has been eliminated.

We obtained an aerial view of the subject site dated 2012 from Google Earth. There are no indications of the white discharge pipes being present at this site (Photo 9). This is an indication that the drainage was changed from being below grade to being replaced with above ground discharge pipes.

Paragraph 8 of the KSI report states:

> *Based on the geometry of the brick sign element and the existing footing size it is very possible a wind force cause the rotation of the brick sign wall. From our experience designing freestanding sign elements we have found the typical foundation for such a structure is far more significant than what was found under this brick sign element. This particular brick sign is helped by the fact that the sign is not completely freestanding but is more akin to a chimney than a freestanding sign. Yet it is subject to significant wind forces which could have led to the rotation of the sign. Also, the fact that the brick sign element has no positive connection to the north wall and is only connected to the roof by the roof membrane will result in a propensity to become overstressed by wind pressure. The sign was connected to the west wall but the recent cracking of this wall has further weakened the assembly.*

Each sentence of Paragraph 8 will be repeated and addressed:

> *Based on the geometry of the brick sign element and the existing footing size it is very possible a wind force cause the rotation of the brick sign wall.*

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

KSI is suggesting that wind is a possible cause. They are not affirming this statement.

> *From our experience designing freestanding sign elements we have found the typical foundation for such a structure is far more significant than what was found under this brick sign element.*

KSI concludes that the foundation was of an improper size indicating either an improper design, an improperly constructed wall, or a combination of both.

> *This particular brick sign is helped by the fact that the sign is not completely freestanding but is more akin to a chimney than a freestanding sign. Yet it is subject to significant wind forces which could have led to the rotation of the sign. Also, the fact that the brick sign element has no positive connection to the north wall and is only connected to the roof by the roof membrane will result in a propensity to become overstressed by wind pressure.*

Again, KSI is suggesting that wind is a possible cause. They are not affirming this statement. Further, this overstress would not occur if the sign was properly designed.

> *The sign was connected to the west wall but the recent cracking of this wall has further weakened the assembly.*

As we previously stated, these cracks do not appear to be recent. The settlement of this wall is due to one of, or a combination of the following: improper drainage, improperly designed footing, or an improperly constructed footing.

Paragraph 9 of the KSI report states:

*We also noted the lower or buried courses of the brick sign element were constructed with cinder block which is subject to deterioration over time (see photo B). With this softer material at the base of the wall and the loss of face shell material this course may not provide the same support it once offered. As this face shell breaks down and the wall leans the cinder block may no longer be capable of supporting the load of the brick sign element which will act to exacerbate the condition and the lean of the wall.*

We concur with this paragraph. KSI has indicated that the deterioration of the cinder block wall may not provide the same support it once offered. This is a deterioration condition that is unrelated to wind.

J. Guider & Associates, P.C.

page 6 of 9

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

## EXECUTIVE SUMMARY

Paragraph 10 of the KSI report states:

*Based on our observations and the photographs attached along with the excavation done on site the brick sign element located at the northwest corner of the building has shifted significantly to the west and slightly to the north. This shifting was not due to settlement of the soil as there was no subsoil erosion observed during the excavation and there was no water source found during excavation which would indicate a cause for the subsoil settlement.*

As previously stated, the movement of the wall was more pronounced towards the north and not the west. They rule out settlement, however, they did not indicate a line of failure along the subject wall. If there was no single location of horizontal failure, the entire wall would have to have moved along with the footing. This is a settlement concern, not a movement due to wind. Subsoil erosion is not an inclusive condition of settlement. The soils may have compacted or already filled any voids that were once present. With regards to the water concern, it is evident that recent changes in the discharge pipes from the roof drains was implemented. As previously stated, the water concern is evident; however, it appears to have been rectified with the placement of the lateral pipes.

Paragraph 11 of the KSI report states:

*The brick sign element was not positively connected to the main building beyond the connection of the roof membrane and north wall brick facade. This lack of connection at the roof and the failure of the north wall connection resulted in the brick sign element failing to resist wind forces typically seen by a freestanding sign or chimney. Therefore, under wind forces, the brick sign element has rotated to the west causing the gap observed in the brick expansion joint and the cracks observed in the north facade; and the brick sign element has also shifted to the north. We also observed a cinder block course at the base of the brick sign element which could contribute to the lean based on the decomposition of the face shell of the block and the compression of this element.*

Insured: G & P Parlamas, Inc.

Loss Location: 1928 Heck Ave., Neptune, NJ

Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470

Damaged Architectural Mount Reportedly due to Wind

September 14, 2016

All of these concerns have been previously discussed in our responses above. However, the KSI report stated that there was no connection of the north wall to the brick sign and then stated that connection had failed. Please have KSI clarify.

Paragraph 12 of the KSI report states:

> *Based on the above observations it is our professional opinion the brick sign element in its current condition is in danger of a partial collapse in a design wind event. Since the entire segment of the wall is out of plumb the only reasonable means of repair is to remove the leaning portion of the wall completely down to grade and reconstruct the wall in accordance with the current code requirements to a plumb and stable condition.*

We concur that if left as is, the subject wall will continue to lean and eventually collapse. This collapse will occur without the aid of a wind force. We concur that the wall should be removed and properly reconstructed.

As part of our assessment, this office contacted NOAA's National Climatic Data Center and obtained climatological data for Monmouth Executive Airport - Belmar/Farmingdale, that is located in Wall New Jersey. This site is located approximately 5 miles from the subject site. We obtained weather data for the months of May and June 2016 (Attachment 1). Our review of this weather data revealed that the area experienced the maximum resultant wind speed of 14.7 miles per hour (mph) on June 9, 2016 and 5.3 mph on June 17, 2016, the date of loss. On May 15, 2016 the high wind recorded that day was 16.1 mph. No significant wind forces were experienced during this time period (May 1, 2016 to dates of loss).

Based on our experience and engineering analysis of the evidence available, within a reasonable degree of engineering certainty, it is the opinion of this organization that our review of the KSI report has not altered our conclusions discussed in our July 15, 2016 report. We concur with our initial findings. Specifically, the movement of the subject architectural mount is due to settlement taking place over an extended period of time in excess of several years. Although not confirmed, the settlement was further exacerbated by the roof drainpipes that may have discharged rainwater closer to the subject wall than at the present time. An undersized footing and deteriorated cinder block wall may have also contributed to the excessive settlement.

Insured: G & P Parlamas, Inc.                    Travelers Insurance - Claim #:  E4R-1470
Loss Location: 1928 Heck Ave., Neptune, NJ       Damaged Architectural Mount Reportedly due to Wind
Review of KSI Report dated August 29, 2016                          September 14, 2016

In addition, our review of weather data concluded that there were no significant wind
occurrences for the area at the time of loss or several weeks prior.

There were no indications of any sudden or one time occurrence to have caused this concern.
As new information becomes available, we reserve the right to amend this report.  We hope
that this submission is sufficiently complete.  If you have any questions, feel free to call.

Sincerely,

James Guider, P.E.

J. Guider & Associates, P.C.
By:     James Guider, P.E.
        NJPE # 32411

enc.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

# PHOTOGRAPHS
## by
## JG&A

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016



Photo 1: Note difference in mortar from left section of wall to right. Also note wider mortar joints.



Photo 2: Box indicates a prior repair as illustrated by wider mortar joints and different color/texture bricks. Double arrow indicates wider mortar joints and newer mortar from a different repair.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #:  E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016



Photo 3:  View of the architectural mount.



Photo 4:  Up-close view of the south end of the architectural mount.  No wrinkling of the
roofing material towards the west noted in the south section of roof.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016



Photo 5:  View of the doubled roof drains.



Photo 6:  Up-close view of Photo 5.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016



Photo 7:  View of a relatively new drainpipe lateral.  This is not typical of original construction.



Photo 8:  View of another drainpipe lateral along the west wall.  Note grade slopes towards the building.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016



Photo 9:  Aerial view of the subject building taken in 2012.  No drainpipe laterals noted.
Photo obtained from the web.



Photo 10:  Aerial view of the subject building taken in 2007.  No double drains noted on roof.
Photo obtained from the web.

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #:  E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

# WEATHER DATA

Case 3:17-cv-04412-FLW-TJB   Document 1-1   Filed 06/16/17   Page 120 of 126 PageID: 125

# QUALITY CONTROLLED LOCAL CLIMATOLOGICAL DATA

**(final)**

NOAA, National Climatic Data Center

Month: 06/2016

**Station Location: MONMOUTH EXECUTIVE AIRPORT (54760)**
**BELMAR/FARMINGDALE, NJ**
Lat. 40.183   Lon. -74.133
Elevation(Ground): 159 ft. above sea level

| Date | Temp Max | Min | Avg | Dep From Normal | Avg Dew pt | Avg Wet Bulb | Heating | Cooling | Sunrise LST | Sunset LST | Significant Weather | Avg Station Press | Avg Sea Level | Resultant Speed | Res Dir | Avg Speed | Date(max wind) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | M | M | M | M | 59 | 64 | M | M | r | r | | M | 30.10 | 6.5 | 07 | M | M 01 |
| 02 | M | M | M | M | 60 | 61 | M | M | r | r | BR | M | 30.14 | 8.2 | 07 | M | M 02 |
| 03 | M | M | M | M | 61 | 62 | M | M | r | r | RA BR | M | 30.08 | 3.6 | 09 | M | M 03 |
| 04 | M | M | M | M | 61 | 66 | M | M | r | r | BR | M | 30.00 | 3.4 | 17 | M | M 04 |
| 05 | M | M | M | M | 66 | 67 | M | M | r | r | RA BR | M | 29.77 | 6.0 | 16 | M | M 05 |
| 06 | M | M | M | M | 62 | 65 | M | M | r | r | | M | 29.70 | 8.6 | 23 | M | M 06 |
| 07 | M | M | M | M | 61 | 65 | M | M | r | r | RA | M | 29.57 | 7.0 | 26 | M | M 07 |
| 08 | M | M | M | M | 48 | 53 | M | M | r | r | RA BR VCTS | M | 29.57 | 12.7 | 28 | M | M 08 |
| 09 | M | M | M | M | 41 | 52 | M | M | r | r | | M | 29.71 | 14.7 | 29 | M | M 09 |
| 10 | M | M | M | M | 43 | 53 | M | M | r | r | | M | 29.87 | 9.2 | 23 | M | M 10 |
| 11 | M | M | M | M | 39 | M | M | M | r | r | | M | 30.02 | 9.1 | 30 | M | M 11 |
| 12 | M | M | M | M | 48 | 57 | M | M | r | r | | M | 29.94 | 9.2 | 30 | M | M 12 |
| 13 | M | M | M | M | 45 | 56 | M | M | r | r | | M | M | 13.0 | 30 | M | M 13 |
| 14 | M | M | M | M | 54 | 61 | M | M | r | r | | M | 30.41 | 7.5 | 10 | M | M 14 |
| 15 | M | M | M | M | 57 | M | M | M | r | r | RA HZ | M | 30.42 | 4.1 | 08 | M | M 15 |
| 16 | M | M | M | M | 55 | 60 | M | M | r | r | | M | 30.43 | 1.7 | 08 | M | M 16 |
| 17 | M | M | M | M | 58 | 66 | M | M | r | r | | M | 30.41 | 2.3 | 19 | M | M 17 |
| 18 | M | M | M | M | 63 | 67 | M | M | r | r | TSRA RA VCTS | M | 30.42 | 2.0 | 14 | M | M 18 |
| 19 | M | M | M | M | 64 | 65 | M | M | r | r | BR | M | 30.37 | 4.5 | 16 | M | M 19 |
| 20 | M | M | M | M | 59 | 64 | M | M | r | r | BR | M | 30.42 | 4.2 | 15 | M | M 20 |
| 21 | M | M | M | M | 64 | 68 | M | M | r | r | BR | M | 30.41 | 5.6 | 25 | M | M 21 |
| 22 | M | M | M | M | 58 | 63 | M | M | r | r | | M | 30.41 | 7.3 | 15 | M | M 22 |
| 23 | M | M | M | M | 58 | 67 | M | M | r | r | | M | 30.41 | 1.8 | 07 | M | M 23 |
| 24 | M | M | M | M | 63 | 63 | M | M | r | r | RA | M | 30.42 | 6.3 | 08 | M | M 24 |
| 25 | M | M | M | M | 62 | 62 | M | M | r | r | RA BR | M | 30.42 | 5.7 | 16 | M | M 25 |
| 26 | M | M | M | M | 67 | 67 | M | M | r | r | BR | M | 30.42 | 3.3 | 17 | M | M 26 |
| 27 | M | M | M | M | 65 | 68 | M | M | r | r | | M | 30.42 | 7.1 | 15 | M | M 27 |
| 28 | M | M | M | M | 69 | 70 | M | M | r | r | | M | 30.42 | 5.8 | 29 | M | M 28 |
| 29 | M | M | M | M | 66 | 69 | M | M | r | r | | M | 30.41 | 2.8 | 15 | M | M 29 |
| 30 | M | M | M | M | 61 | 61 | M | M | r | r | | M | M | 1.7 | 23 | M | M 30 |
| | M | M | M | | 58.0 | M | M | M | | | ←Monthly Averages| Totals→ | M | M | 1.7 | 23 | <Monthly Average |

Departure From Normal →

Degree Days: Monthly M; Season to Date M; Total Departure Total Departure M

Greatest 24-hr Precipitation: M   Date: M
Greatest 24-hr Snowfall: M   Date: M

Sea Level Pressure Date   Time (LST)
Maximum M   M   M

*(handwritten annotations: "D.O.L." with arrows)*

|  |  | Greatest Snow Depth: M Date: M | | Minimum M    M    M | |
|---|---|---|---|---|---|
| Heating: M    M    M    M | | | Max Temp >=90: M | Min Temp <=32: M | Precipitation >=.01 inch: M |
| Cooling: M    M    M    M | Number of Days with ——→ | Max Temp <=32: M | Min Temp <=0 : M | Precipitation >=.10 inch: M |
| | | Thunderstorms : 1 | Heavy Fog : 0 | Snowfall >=1.0 inch : M |

* EXTREME FOR THE MONTH - LAST OCCURRENCE IF MORE THAN ONE.

**Data Version: VER2**

# QUALITY CONTROLLED LOCAL CLIMATOLOGICAL DATA

(final)

NOAA, National Climatic Data Center

Month: 05/2016

**Station Location: MONMOUTH EXECUTIVE AIRPORT (54760)**
**BELMAR/FARMINGDALE, NJ**
Lat 40.183  Lon -74.133
Elevation(Ground): 159 ft. above sea level

| Day | Temperature (Fahrenheit) | | | | | | Degree Days Base 65 Degrees | | Sun | | Significant Weather | Snow/Ice on Ground(in) | | | | Pressure (inches of Hg) | | Wind Speed (mph) | | | | | Day |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Max. | Min. | Avg. | Dep From Normal | Avg. Dew pt. | Avg. Wet Bulb | Heating | Cooling | Sunrise LST | Sunset LST | | Depth | Water Equiv 1200 UTC | Snow/Fall 1800 UTC | Water Equiv 2400 | Avg. Station | Avg. Sea Level | Resultant Speed | Dir | Avg. Speed | Speed/Dir 5-second max | Speed/Dir 2-minute max | |
| 01 | M | M | M | M | 45 | 46 | M | M | : | : | RA BR | M | M | M | M | M | 30.17 | 7.0 | 08 | M | M | M | 01 |
| 02 | M | M | M | M | 50 | 51 | M | M | : | : | RA BR | M | M | M | M | M | 29.98 | 1.6 | 09 | M | M | M | 02 |
| 03 | M | M | M | M | 50 | 50 | M | M | : | : | RA BR | M | M | M | M | M | 29.86 | 6.5 | 07 | M | M | M | 03 |
| 04 | M | M | M | M | 46 | 47 | M | M | : | : | RA BR VCTS | M | M | M | M | M | 29.77 | 10.3 | 08 | M | M | M | 04 |
| 05 | M | M | M | M | 44 | M | M | M | : | : | RA BR | M | M | M | M | M | 29.69 | 9.6 | 03 | M | M | M | 05 |
| 06 | M | M | M | M | 47 | 48 | M | M | : | : | RA BR | M | M | M | M | M | 29.73 | 12.5 | 09 | M | M | M | 06 |
| 07 | M | M | M | M | 48 | 49 | M | M | : | : | RA BR HZ | M | M | M | M | M | 29.80 | 4.7 | 27 | M | M | M | 07 |
| 08 | M | M | M | M | 40 | 50 | M | M | : | : | RA BR HZ | M | M | M | M | M | 29.78 | 7.5 | 09 | M | M | M | 08 |
| 09 | M | M | M | M | 35 | 46 | M | M | : | : | HZ | M | M | M | M | M | 30.04 | 9.2 | 27 | M | M | M | 09 |
| 10 | M | M | M | M | 43 | 51 | M | M | : | : | RA | M | M | M | M | M | 30.24 | 1.7 | 24 | M | M | M | 10 |
| 11 | M | M | M | M | 43 | 55 | M | M | : | : | HZ | M | M | M | M | M | 30.18 | 1.5 | 31 | M | M | M | 11 |
| 12 | M | M | M | M | 59 | 60 | M | M | : | : | BR | M | M | M | M | M | 30.10 | 3.6 | 11 | M | M | M | 12 |
| 13 | M | M | M | M | 54 | 58 | M | M | : | : | RA BR | M | M | M | M | M | 29.87 | 3.3 | 17 | M | M | M | 13 |
| 14 | M | M | M | M | 33 | 43 | M | M | : | : | RA BR | M | M | M | M | M | 29.75 | 4.3 | 20 | M | M | M | 14 |
| 15 | M | M | M | M | 30 | 50 | M | M | : | : | RA | M | M | M | M | M | 29.86 | 16.61 | 26 | M | M | M | 15 |
| 16 | M | M | M | M | 45 | 49 | M | M | : | : | | M | M | M | M | M | 30.12 | 12.6 | 27 | M | M | M | 16 |
| 17 | M | M | M | M | 44 | 51 | M | M | : | : | RA BR | M | M | M | M | M | 30.20 | 4.4 | 14 | M | M | M | 17 |
| 18 | M | M | M | M | 46 | 53 | M | M | : | : | RA BR | M | M | M | M | M | 30.15 | 2.5 | 06 | M | M | M | 18 |
| 19 | M | M | M | M | 43 | 54 | M | M | : | : | RA | M | M | M | M | M | 30.24 | 1.1 | 20 | M | M | M | 19 |
| 20 | M | M | M | M | 50 | 59 | M | M | : | : | | M | M | M | M | M | 30.06 | 6.0 | 07 | M | M | M | 20 |
| 21 | M | M | M | M | 52 | 60 | M | M | : | : | RA BR | M | M | M | M | M | 29.86 | 3.7 | 12 | M | M | M | 21 |
| 22 | M | M | M | M | 50 | 64 | M | M | : | : | RA BR | M | M | M | M | M | 29.93 | 2.1 | 28 | M | M | M | 22 |
| 23 | M | M | M | M | 56 | 65 | M | M | : | : | RA | M | M | M | M | M | 29.55 | 2.7 | 26 | M | M | M | 23 |
| 24 | M | M | M | M | 50 | 67 | M | M | : | : | RA | M | M | M | M | M | 30.08 | 6.9 | 19 | M | M | M | 24 |
| 25 | M | M | M | M | 56 | 67 | M | M | : | : | | M | M | M | M | M | 30.10 | 5.6 | 18 | M | M | M | 25 |
| 26 | M | M | M | M | 63 | | M | M | : | : | | M | M | M | M | M | 30.08 | 1.9 | 19 | M | M | M | 26 |
| 27 | M | M | M | M | 60 | | M | M | : | : | | M | M | M | M | M | 30.14 | 6.8 | 18 | M | M | M | 27 |
| 28 | M | M | M | M | 63 | | M | M | : | : | RA | M | M | M | M | M | 30.08 | 6.4 | 20 | M | M | M | 28 |
| 29 | M | M | M | M | 70 | | M | M | : | : | RA BR | M | M | M | M | M | 30.13 | 5.8 | 18 | M | M | M | 29 |
| 30 | M | M | M | M | 67 | | M | M | : | : | BR | M | M | M | M | M | 30.00 | 6.3 | 20 | M | M | M | 30 |
| 31 | M | M | M | M | | | M | M | : | : | | M | M | M | M | M | 29.98 | 2.9 | 18 | M | M | M | 31 |
| | M | M | M | M | 49.3 | 54.1 | M | M | | | ← Monthly Averages / Totals → | | M | M | M | M | M | 0.9 | | M | M | ← Monthly Average | |

Degree Days:  Monthly _____  Season to Date _____
Total Departure _____  Total Departure _____

← Monthly Averages / Totals →
← Departure From Normal →

Greatest 24-hr Precipitation M Date: M
Greatest 24-hr Snowfall M Date: M

Sea Level Pressure Date _____  Time (LST)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Greatest Snow Depth: M Date: M | | | | Maximum M    M  M | | |
| | | | | | | Minimum M    M  M | | |
| Heating: M   M   M   M | | | | Number of Days with ——> | Max Temp >=90: M | Min Temp <=32: M | Precipitation >=.01 inch: M |
| Cooling: M   M   M   M | | | | | Max Temp <=32: M | Min Temp <=0 : M | Precipitation >= .10 inch: M |
| | | | | | Thunderstorms : 0 | Heavy Fog    : 0 | Snowfall >=1.0 inch   : M |

* EXTREME FOR THE MONTH - LAST OCCURRENCE IF MORE THAN ONE.

**Data Version: VER2**

Insured: G & P Parlamas, Inc.
Loss Location: 1928 Heck Ave., Neptune, NJ
Review of KSI Report dated August 29, 2016

Travelers Insurance - Claim #: E4R-1470
Damaged Architectural Mount Reportedly due to Wind
September 14, 2016

# LAST PAGE

# OF THIS

# REPORT

J. Guider & Associates, P.C.

**Appendix XII-B1**

<table>
<tr>
<td rowspan="2"></td>
<td rowspan="2" colspan="2"><strong>CIVIL CASE INFORMATION STATEMENT</strong><br>(CIS)<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under <em>Rule</em> 4:5-1<br><strong>Pleading will be rejected for filing, under <em>Rule</em> 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed</strong></td>
<td colspan="2">FOR USE BY CLERK'S OFFICE ONLY<br>PAYMENT TYPE: ☐ CK ☐ CG ☐ CA</td>
</tr>
<tr>
<td colspan="2">CHG/CK NO.<br><br>AMOUNT:<br><br>OVERPAYMENT:<br><br>BATCH NUMBER:</td>
</tr>
</table>

| ATTORNEY / PRO SE NAME<br>Frederick C. Biehl, III, Esq. | TELEPHONE NUMBER<br>(973) 364-0111 | COUNTY OF VENUE<br>Monmouth |
|---|---|---|
| FIRM NAME (if applicable)<br>Soriano, Henkel, Biehl & Matthews, P.C. | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>75 Eisenhower Parkway<br>Suite 110<br>Roseland, NJ 07068 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ■ Yes  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>G&P Parlamas, Inc., Plaintiff | CAPTION<br>G&P Parlamas, Inc. v. The Travelers Indemnity of America |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br><br>505 | HURRICANE SANDY<br>RELATED?<br>☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53 A -27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES  ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ■ UNKNOWN |

| **THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.** |
|---|
| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☐ YES  ■ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |
|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ■ No | |

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR<br>ACCELERATED DISPOSITION |
|---|
| |

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes  ■ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be<br>redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|

| ATTORNEY SIGNATURE: _Frederick C. Biehl_          4/21/17 |
|---|

## Harrell, Torrence

| | |
|---|---|
| **From:** | Delgado,Wilma <WDELGAD1@travelers.com> |
| **Sent:** | Friday, May 19, 2017 3:11 PM |
| **To:** | TravelersSOP |
| **Cc:** | Service-of-Process-Coordinator |
| **Subject:** | Travelers Direct 5/19/17 |
| **Attachments:** | G & P Parlamas  v. Trav Ind of Am(s).pdf |

This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.